UNITED STATES of America, Appellee,

v.

Gloria AULET, Appellant.

No. 547, Docket 79–1228.

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1980.

Decided March 10, 1980.

Kristin Booth Glen, Hofstra Law School, Hempstead, N. Y., for appellant.

Vivian Shevitz, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Harvey M. Stone, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y., of counsel), for appellee.

Before MOORE, FRIENDLY and MES-KILL, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a judgment of conviction entered in the United States District Court for the Eastern District of New York after a three day jury trial before Chief Judge Jacob Mishler. Appellant was convicted of the knowing importation of cocaine into the United States and of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 952(a) and 841(a)(1), and was sentenced to two years' imprisonment and a special parole term of eight years on each count, to run concurrently. Appellant raises several claims of error, the most serious of which is that she was denied the effective assistance of counsel. Having determined that these claims are lacking in merit, we affirm.

## BACKGROUND

In December, 1978, Gloria Aulet, an Argentinian citizen living in the United States as a resident alien, arrived at John F. Kennedy Airport on a flight from Bolivia. During a routine inspection at the airport, United States Customs Inspector James Cirigliano asked Aulet several questions and examined her luggage. Although the luggage revealed nothing unusual, statements made by Aulet apparently aroused Cirigliano's

suspicions[1] and he decided that a search of her person was necessary. Cirigliano escorted Aulet to a private examination room and summoned a female Customs Inspector, Annette Artis. When Artis asked Aulet to disrobe, Aulet reached inside her clothing and removed two feminine napkins, stating, "Here it is." Artis immediately turned the napkins over to Cirigliano. As they appeared to have something inside them, Cirigliano opened the napkins. Inside he discovered a white powder which he tested and found to be cocaine. Cirigliano arrested Aulet and read her the *Miranda* warnings in English. Although it was apparent that English was not her native language, Aulet stated that she understood Cirigliano.

Cirigliano's supervisor summoned Special Agent Trustey of the Drug Enforcement Administration, who arrived at the examination room several minutes later. After reading Aulet her rights, again in English, Trustey had a short conversation with her, pursuant to which Aulet agreed to cooperate with the DEA Agent and to give him information about another courier who had accompanied her on the plane. Trustey thereupon called for an interpreter to facilitate further discussion. Aulet and the agents spent approximately six hours in the airport developing the details surrounding her trip to Bolivia, her return with the napkins, and the other participants in the venture. Testimony given at the subsequent trial indicated that during these conversations Aulet had admitted to traveling to Bolivia at the request of an acquaintance who promised to pay her four thousand dollars for successfully bringing two small packages into the United States.

After being assigned court-appointed counsel, Aulet pleaded not guilty and went to trial. Aulet did not deny that she had carried cocaine into the country. Instead her defense centered on the claim that she had lacked the requisite criminal intent. Aulet testified that she had believed she was carrying contraband, either gold or jewelry, and had not known or believed that she was carrying drugs, and she produced character witnesses who testified to her reputation for honesty and truthfulness. No motion was made before or during trial to suppress the evidence gathered during the search and questioning of Aulet at the airport.

On appeal Aulet, represented by a different attorney,[2] alleges that she did not receive effective assistance of counsel at trial, that the evidence did not support a guilty verdict, that the district judge improperly excluded cooperation evidence, and that the jury was not properly charged on the issue of conscious avoidance.

## DISCUSSION

1. *The Record on Appeal*

■ Before reaching the merits of Aulet's claims, we note the difficulties encountered in addressing an issue which is raised for the first time on appeal, as is the ineffective assistance of counsel question in this case. Generally, an appellate court will not consider an issue that has not been presented to the court below. *United States v. Hermann*, 524 F.2d 1103, 1104 (2d Cir. 1975); *United States v. Foddrell*, 523 F.2d 86, 87 (2d Cir.), *cert. denied*, 423 U.S. 950, 96 S.Ct. 370, 46 L.Ed.2d 286 (1975). The usual method of challenging the effectiveness of defense counsel in a federal criminal trial is by a collateral attack on the conviction under 28 U.S.C. § 2255. *See, e. g., United*

---

1. Inspector Cirigliano testified that while he was inspecting Aulet's suitcase she said, "Oh, you can rip that open. You can break that. I have nothing wrong. I have no . . . ." Cirigliano stated that although he was unsure whether or not Aulet had said "contraband," he remembered that she had said she had nothing illegal in her suitcase. In view of the defense strategy there was no testimony as to whether or not Cirigliano's suspicions were actually aroused by Aulet's statements.

2. At trial, Aulet was represented by assigned counsel from the Legal Aid Society. Assigned counsel apparently moved to be relieved from representation on appeal. Aulet appears before this Court with new counsel assigned pursuant to the Criminal Justice Act and as part of a program in Appellate Litigation at Hofstra Law School.

States v. Schreiber, 599 F.2d 534, 538 (3d Cir.), cert. denied, 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (U.S. Oct. 2, 1979); United States v. Rodriquez, 582 F.2d 1015, 1016 (5th Cir. 1978) (per curiam); United States v. Kazni, 576 F.2d 238, 242 (9th Cir. 1978). When this path is taken, the district judge can, in an appropriate case, hold an evidentiary hearing and develop a full factual record before reaching a decision.[3]

The value of proceeding in this way is amply demonstrated by the instant case. Aulet's attack on trial counsel's effectiveness is directed at the failure to move for suppression of the physical evidence and statements taken from Aulet at the airport during and subsequent to an allegedly illegal search. On a record completely devoid of any indication of trial counsel's reasons for foregoing a suppression motion, Aulet has asked us to hold that the failure to make such a motion constituted a denial of Aulet's Sixth Amendment right to counsel. On an equally barren record the government asks us to rule that there was no such denial of the right to counsel. With the case in this posture, it is difficult for either side to present to this Court the factual material that would be helpful in deciding whether Aulet should receive a new trial. Despite the general rule of forebearance, however, "[c]ertainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt . . . or where 'injustice might otherwise result.'" Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). This is one of those rare cases. Because we believe that resolution of this issue is beyond any doubt and that a remand for further proceedings or a refusal to address the merits of the issue without

prejudice to its being raised collaterally would be a waste of judicial resources, and because both sides ask us to decide the issue, we reach the merits of Aulet's claim of ineffective assistance of counsel.

Before doing so, however, we must resolve the dispute that has arisen over what parts of the record before us we may properly consider. The notice of appeal in this case was filed on June 8, 1979, and the record on appeal was filed on July 19, 1979, and supplemented with trial transcripts on August 29, 1979. The government, after receiving appellant's brief and learning that she was raising a claim of ineffective assistance of counsel, supplemented this record on October 11, 1979, adding "3500 material"[4] which it had given to trial counsel before trial, but had never had occasion to introduce into evidence during the proceedings below. Appellant's counsel made a motion to strike this second supplemental record on November 2, 1979, alleging that because it was not part of the trial record, it is not properly before this Court. The motion was denied, with assurances that this Court would not rest its decision on materials not properly in the record on appeal. It appears that appellant's counsel objects to the inclusion of the 3500 material on the ground that she was unaware of its existence until she received the government's brief in October of 1979. An examination of the trial transcript, however, reveals that the court below noted on the record that the government attorney had given the 3500 material to Aulet's trial counsel at the beginning of the trial. Since the existence of this material and trial counsel's access to it would have been disclosed by a simple reading of the transcript, appellant's present counsel cannot now complain about her failure to have ascertained the contents of this potentially

---

3. This is not to say that the issue of ineffective assistance of counsel cannot be raised on direct appeal, i. e., after the denial of a motion for a new trial under Fed.R.Crim.P. Rule 33. Like the § 2255 procedure, this option makes possible the development of a factual record which can be made available to the appellate court if an appeal is taken.

4. Section 3500 of Title 18 provides for the production of statements and reports made by government witnesses and in the government's possession, after the witness has testified on direct examination. The transcript in the instant case demonstrates that the government turned these materials over to trial counsel at the beginning of trial.

crucial material at an earlier stage in the appeal process.

Appellant maintains, however, that we should decide whether failure to move for a suppression hearing constituted inadequate assistance of counsel solely on the record below, without any consideration of the very materials which may have prompted trial counsel to forego such a motion. Appellant does not contest the fact that trial counsel had timely access to the 3500 material now before this Court but she strenuously objects to our considering the 3500 material itself in deciding the ineffective assistance of counsel issue. We see no justification in this case for ignoring these materials which bear heavily on the merits of appellant's claim. Indeed, were we to do so, appellant would be in a stronger position than she would have been in had she raised the issue either below or collaterally and thus facilitated the creation of a proper factual record for our review. The 3500 material which appellant wishes to prevent us from considering includes the very materials a district judge would have examined in deciding a suppression motion, had one been made. In urging this Court to ignore this same evidence in deciding whether trial counsel's failure to make a suppression motion constitutes ineffective assistance of counsel, appellant fails to suggest what principle of law or equity would be served by our thus shielding ourselves from the knowledge of what transpired below. Where anything material to a claim on appeal is omitted from the record, this Court, under authority of Rule 10(e), Fed.R. App.P., may, "on proper suggestion or of its own initiative" direct that a supplemental record be certified and transmitted. See, e. g., Arnold Productions Inc. v. Favorite Films Corp., 291 F.2d 94, 96 (2d Cir. 1961); Gunther v. E.I. DuPont de Nemours & Co., 255 F.2d 710, 716 (4th Cir. 1958). See also National Nutritional Foods Ass'n v. FDA, 491 F.2d 1141, 1144 (2d Cir.), cert. denied, 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); Williams v. Pennsylvania R.R. Co., 313 F.2d 203, 209 (2d Cir. 1963). Thus, even if the government had not supplemented the record on appeal with the 3500 material,

we could invoke our power to supplement the record by requiring transmission of that relevant evidence, and that exercise of our authority would be appropriate in light of the fact that both parties have urged us to resolve this matter. Accordingly, we reach our decision based on a consideration of the record on appeal as supplemented by the government.

2. Ineffective Assistance of Counsel

The standard for judging assistance of counsel in this Circuit was established in United States v. Wight, 176 F.2d 376 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), and was recently upheld in Indiviglia v. United States, 612 F.2d 624 (2d Cir. 1979):

[U]nless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds for the issuance of a writ of habeas corpus . . . .

A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice.

United States v. Wight, 176 F.2d at 379 (footnote and citations omitted). Aulet invites us to retreat from this standard and adopt the "reasonable competence" standard adhered to by several other circuits. Such reconsideration is not appropriate at this time. On the facts of this case we would reach the same conclusion under either standard.

We are satisfied that trial counsel would have risked little or nothing by making a motion to suppress the physical evidence seized and the statements made by Aulet at the time of her arrest and questioning. The government makes no claims to the contrary. But defense counsel is not required automatically to file a suppression motion in every case involving evidence or statements obtained after a search; rather, counsel must use "professional discretion in

deciding whether there are sufficient grounds" for such a motion. *LiPuma v. Commissioner, Department of Corrections,* 560 F.2d 84, 93 (2d Cir.), *cert. denied,* 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977). "To rule otherwise would go a long way towards affirmatively requiring defense counsel to file a suppression motion no matter how tenuous the grounds supporting it for counsel's own protection if for no other reason." *Id.* An examination of this Court's decisions concerning failure to make various pretrial motions or trial objections demonstrates that we require a clear showing of inadequacy in counsel's performance to justify overturning a conviction. In *LiPuma,* holding that a failure to make a pretrial motion to suppress an identification, *see United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), was justified by facts in the record, we emphasized that claims of ineffective assistance must be premised on actual, not possible, prejudice to the client. 560 F.2d at 92. *Compare United States v. Daniels,* 558 F.2d 122, 126 (2d Cir. 1977) (failure to seek pretrial *Wade* hearing not ineffective assistance where no real basis to question identification) *with Saltys v. Adams,* 465 F.2d 1023, 1028 (2d Cir. 1972) (failure to request *Wade* hearing constituted ineffective assistance where highly viable *Wade* argument apparent). Similarly, in *Indiviglio v. United States, supra,* at 629, we held that counsel's failure to raise a "presumably meritorious pretrial suppression motion" did not amount to inadequate assistance although the search warrants in question, which appeared valid on their face, were subsequently invalidated in a civil case. *See also Bellavia v. Fogg,* 613 F.2d 369, 374–75 (2d Cir. 1979); *Twitty v. Smith,* 614 F.2d 325, 333–35 (2d Cir. 1979).

 As Aulet suggests, an evaluation of alleged ineffective assistance of counsel usually begins with an examination of the strength of the prosecutor's case. *United States v. Bubar,* 567 F.2d 192, 202 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977); *United States v. Katz,* 425 F.2d 928, 930 (2d Cir. 1970). Viewed in the light of our recent interna-

tional border search decisions, the case against Gloria Aulet appears strong. *See United States v. Nieves,* 609 F.2d 642 (2d Cir. 1979); *United States v. Asbury,* 586 F.2d 973 (2d Cir. 1978). In *Asbury* we set forth the requirements for a lawful border search that goes beyond a routine inspection, stating that the search must be reasonable and that in each case reasonableness should be determined by "weighing the warranted suspicion of the border official against the offensiveness of the intrusion." 586 F.2d at 976. We listed several factors that might warrant a search: (1) excessive nervousness, (2) unusual conduct, (3) informant's tip, (4) computerized information, (5) loose fitting or bulky clothing, (6) suspicious itinerary, (7) incriminating matter discovered through routine search, (8) lack of employment or claim of self-employment, (9) needle marks or other indications of drug addiction, (10) information from search or conduct of traveling companion, (11) inadequate luggage, and (12) evasive or contradictory answers. *Id.* at 977. Most recently, in *United States v. Nieves, supra,* we indicated that two of these factors, a suspicious itinerary and inadequate luggage, were sufficient to justify a search that included removing and drilling into the suspect's shoes. Reaffirming that any decision to cross our nation's borders fulfills the reasonableness requirement· of a routine search, this Court again relied on a balance between the offensiveness of the intrusion and the border official's warranted suspicion in judging the propriety of the more extensive search challenged in *Nieves.*

 The facts surrounding the search in the instant case were not elicited at trial due to trial counsel's defense strategy. An examination of the 3500 material, however, clearly demonstrates that had a motion to suppress been made it would have been unsuccessful. Inspector Cirigliano, a customs inspector with five years of experience, testified that while he was searching Aulet's luggage at the inspection station, Aulet made several statements to him which could have reasonably aroused his

suspicions.[5] Cirigliano stated in his report that Aulet seemed nervous and appeared bulky on her lower backside. Furthermore, Aulet's name appeared on a list of possible smugglers Cirigliano had obtained from a computer while Aulet was going through Customs. In addition, Aulet's passport revealed a recent trip to Colombia, a source country for the importation of cocaine. It is true that Cirigliano would have been subject to cross-examination at a suppression hearing. Nevertheless, even considering the evidence in the light least favorable to the government, we are constrained to find that trial counsel could reasonably have concluded that Cirigliano had a reasonable basis for conducting the search.

Because the search in this case was proper, we need not address Aulet's challenge to the admission of certain evidence as "fruit of the poisonous tree."[6] We also regard as without merit Aulet's objections on Fifth Amendment grounds to the admission of statements made during and after the search. Inspector Cirigliano and Agent Trustey read Aulet her rights in English and specifically asked if she understood, to which she responded in the affirmative. Additionally, an informative interview with Agent Trustey, conducted in English, occurred following these warnings. An interpreter who subsequently read the *Miranda* warnings in Spanish also inquired whether Aulet understood and received an affirmative answer. At trial Judge Mishler conversed with Aulet several times and commented that she spoke English "fairly well." In addition, many of Aulet's statements were admitted into evidence specifically to show that she made an immediate decision to cooperate with the authorities after her arrest. It is, therefore, apparent that Aulet made her statements voluntarily,

and a suppression motion would have been futile.

Trial counsel adopted a strategy of attempting to convince the jury that although Aulet knew she was bringing something illegal into the country, she did not know that she was carrying cocaine. We are satisfied that for better or worse the decision not to file a suppression motion was based on the strength of the government's case and the not untenable judgment that Aulet's best defense was a denial of knowledge of the contents of the napkins. To establish this defense, trial counsel engaged in extensive direct examination of Aulet on the circumstances of the trip, her reasons for making the trip, and what she believed she was carrying. Trial counsel also elicited from each of the agents involved in the search testimony to the effect that Aulet had never acknowledged that she was carrying drugs.

We are reluctant to second guess matters of trial strategy simply because the chosen strategy has failed. The courts must allow trial counsel some latitude in deciding which pretrial motions are called for in a given case. *United States v. Ritch*, 583 F.2d 1179, 1182–83 (1st Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). As we stated in *United States ex rel. Cruz v. LaVallee*, 448 F.2d 671, 679 (2d Cir. 1971), *cert. denied*, 406 U.S. 958, 92 S.Ct. 2064, 32 L.Ed.2d 345 (1972), "A lawyer must be able to determine questions of strategy during trial; and unless there are exceptional circumstances or unless the lawyer is so incompetent as to deprive the defendant of the right to effective assistance of counsel, his decision regarding trial strategy must be binding." *See also United States v. Garguilo*, 324 F.2d 795, 797 (2d Cir. 1963). Aulet has simply failed to demonstrate that she was not adequately repre-

---

5. *See* note 1 *supra.*

6. Aulet challenges trial counsel's judgment in failing to object to the admission of Aulet's passport and the feminine napkins, arguing that the jury considered these items improperly. After considering the record, however, we must note that both trial counsel and Judge

Mishler were careful to advise the jury that these items were of limited relevance. It is apparent that in view of the defense strategy trial counsel acted within the bounds of proper advocacy in not objecting to the admission of these items.

sented at trial.[7] "As in so many cases of this type, the petitioner freely equates lack of success in his criminal defense with counsel incompetency, and illogically and irrationally blames his predicament, which is primarily of his own doing, upon the inability of counsel to extricate him. Appointed counsel who devotes his talent and his time in a helpful and not well compensated effort usually deserves better treatment than this." *Slawek v. United States*, 413 F.2d 957, 958 (8th Cir. 1969) (Blackmun, *Circuit Judge* ).

### 3. *The Jury Charge*

Aulet argues that the only possible premise for the verdict was a finding that Aulet consciously avoided learning the truth about the packages. She points to several alleged errors in the judge's charge to the jury on the subject of conscious avoidance,[8] claiming that they require reversal. The government maintains that the jury charge was correct and furthermore that the jury could have based its guilty verdict on a finding of actual knowledge of the napkins' contents. Examining the charge as a whole, *United States v. Bright*, 517 F.2d 584, 588 (2d Cir. 1975), we find that Judge Mishler properly apprised the jury of the elements necessary to support a guilty verdict.

 This Court has recognized that in cases where knowledge is an essential element, specific knowledge is not always necessary; rather, purposeful ignorance may suffice. *United States v. Joly*, 493 F.2d 672, 675 (2d Cir. 1974). *See also United States v. Dozier*, 522 F.2d 224, 226–27 (2d Cir.), *cert. denied*, 423 U.S. 1021, 96 S.Ct. 461, 46 L.Ed.2d 394 (1975). In *Bright, supra*, 517 F.2d at 587, we noted that a defendant is entitled to instructions on the question of conscious avoidance that balance the "high probability" test of knowledge of a given fact with its negation by actual belief in the nonexistence of that fact. An examination of the recent case of *United States v. Morales*, 577 F.2d 769 (2d Cir. 1978), is helpful in determining the adequacy of conscious avoidance charges. In *Morales* we stated that the nature of the balancing language required would depend

---

7. Indeed, during the trial Judge Mishler commented on counsel's trial experience and commended her for an excellent summation.

8. Judge Mishler's initial charge and his corrected charge read as follows:

The defendant, of course, argues with equal vigor that all those circumstances show only that she believed that it was gold or jewelry of some kind. But the Government is not required to prove beyond a reasonable doubt that she knew it was cocaine. If the Government proves beyond a reasonable doubt that the defendant was aware of the high probability that the substance he was carrying was a controlled substance, then the element of criminal knowledge shall have been proven. If the Government proves beyond a reasonable doubt that the defendant was aware of the high probability that the substance she was carrying was a controlled substance and deliberately refused to learn the facts, the Government shall have satisfied the burden of proving guilty knowledge, as I also use the term, criminal intent.

Proof of negligence or mistake or that the Government (sic) acted foolishly does not prove guilty knowledge. If you find that the defendant actually believed that she was carrying gold or gold jewelry, then, in effect, you shall have found that she was not aware of the high probability that it was a con-

trolled substance, and, in that event, I direct that you find the defendant not guilty.

\* \* \* \* \* \*

I misspoke when I was giving the charge about conscious avoidance to the deliberate refusal to look at the facts, when I said something about, "the Government acted foolishly." I'm going to correct it. Of course, I wasn't referring to actions by the Government. I was referring to what you might regard as actions by the defendant as being foolish; and so, when I charged that the Government could prove guilty knowledge by proving beyond a reasonable doubt that the defendant was aware of the high probability that the substance she was carrying was a controlled substance, I misspoke when I referred to proof that would be insufficient to prove guilty knowledge; and I said to you that, if all the Government proved was that the defendant was negligent or that she made a mistake or that the defendant acted foolishly, it does not prove guilty knowledge. I hope that corrects the misstatement I made.

Aulet's attempt to assign error to Judge Mishler's corrected charge is totally without merit; it is clear from the record that the Judge was simply correcting a misstated word, and trial counsel agreed with the restatement. .

on the evidence in each case, while noting at the same time that in previous drug cases most charges required references to the defendant's conscious avoidance *and* actual belief. 577 F.2d at 774 n.4. We also noted our approval of an instruction on conscious avoidance drawn from the Model Penal Code § 2.02(7) which "serve[s] to focus the jury's attention on the extent of the defendant's actual knowledge and to assure that a conviction is not based on mere negligence, foolishness or stupidity." 577 F.2d at 775 n.6. The instruction referred to originated in *United States v. Valle-Valdez*, 554 F.2d 911 (9th Cir. 1977), where the Ninth Circuit found a charge deficient because it did not apprise the jury that conscious avoidance was culpable only if the defendant was aware of the high probability that he was transporting drugs. The principle to be gleaned from these cases is that a conscious avoidance charge must include references to a purposeful avoidance of the truth, *Dozier*, 522 F.2d at 227; an awareness of high probability, *Morales*, 577 F.2d at 774; and the absence of defendant's actual belief in the nonexistence of the crucial fact, *Bright*, 517 F.2d at 587. All of these elements were present in Judge Mishler's charge, and, therefore, there is no error.

### 4. *Exclusion of Evidence; Sufficiency of Evidence*

Finally, Aulet urges, contrary to her prior arguments about the suppression of her statements, that Judge Mishler erred when he refused to allow testimony revealing Aulet's post-arrest statements which demonstrated her willingness to cooperate with DEA officials. After her arrest Aulet spent some six hours with officials in the airport discussing her venture and its various participants. She also attempted, unsuccessfully, to make a controlled delivery. Aulet's trial counsel attempted to elicit the details of this cooperation during trial, but Judge Mishler excluded this evidence because it was not relevant to Aulet's state of mind at the time of her arrest.

We dispose of Aulet's contention by reference to two factors. First, evidence of Aulet's decision to cooperate was admitted into evidence and the jury was given the opportunity to decide whether this decision was an indication that Aulet did not know she was carrying cocaine. The verdict demonstrates that the jury chose to believe that her decision to cooperate meant something other than ignorance, and we fail to see how the details of the cooperation could have changed this result.

Second, this Court is reluctant to overturn evidentiary rulings in the absence of an abuse of the district court's broad discretion in these matters. 10 Moore's Federal Practice ¶¶ 401.03(6); 403.02(4) (2d ed. 1979). *See, e. g., Hamling v. United States*, 418 U.S. 87, 125–27, 94 S.Ct. 2887, 2911–12, 41 L.Ed.2d 590 (1974); *United States v. Robinson*, 560 F.2d 507, 514–16 (2d Cir. 1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978); *United States v. Corr*, 543 F.2d 1042, 1051 (2d Cir. 1976).

Turning finally to the claim that the evidence below was insufficient to support the jury's verdict and viewing the evidence in the light most favorable to the government, as we must, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), it is obvious that the jury could have found either that Aulet had actual knowledge that she was carrying cocaine or that she culpably and consciously avoided that knowledge.

The judgment of conviction is affirmed.