UNITED STATES of America, Appellee,

v.

**Valerie HELGESEN,**
**Defendant-Appellant.**

No. 577, Docket No. 81–1379.

United States Court of Appeals,
Second Circuit.

Submitted Jan. 7, 1982.

Decided Jan. 14, 1982.

Certiorari Denied April 19, 1982.
See 102 S.Ct. 1978.

Barry W. Agulnick, New York City
(Agulnick & Gogel, New York City, of counsel), for defendant-appellant.

Ruth A. Nordenbrook, Asst. U. S. Atty.,
E. D. N. Y., Brooklyn, N. Y. (Edward R.
Korman, U. S. Atty., Jane Simkin Smith,
Asst. U. S. Atty., E. D. N. Y., Brooklyn, N.
Y., of counsel), for appellee.

Before MOORE, KAUFMAN, and VAN
GRAAFEILAND, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

This is an appeal from a judgment of
conviction entered in the United States District Court for the Eastern District of New
York after a bench trial before Judge Edward R. Neaher. 513 F.Supp. 209. Valerie
Helgesen was convicted of sixteen counts of

the fraudulent use of credit cards, in violation of 15 U.S.C. § 1644(a), and seven counts of bank fraud, in violation of 18 U.S.C. § 1014, all counts arising from a short-lived but highly remunerative fraudulent scheme conducted from a small boutique in Brooklyn, New York. Judge Neaher sentenced Helgesen to concurrent terms of imprisonment of three years on each count. Pursuant to 18 U.S.C. § 3651, the trial court sentenced her to serve six months with the balance of the term of imprisonment suspended on each count, and concurrent five-year periods of probation to follow. On appeal, Helgesen raises several claims of error, the most serious of which is that she was denied the effective assistance of counsel. We determine that these claims are without merit, and, accordingly, affirm the judgment of conviction. We remand to the district court, however, to correct the sentence on the seven counts of bank fraud in violation of 18 U.S.C. § 1014, which carries a maximum authorized sentence of two years' imprisonment.

## I.

The facts may be briefly recounted. In November, 1978, Valerie Helgesen and a friend, Jane Blangiardo, opened the Brooklyn Heights Home Boutique, a retail decorating business, in Brooklyn, New York. The Boutique's inventory consisted mainly of paint and related supplies such as brushes and rollers, and had a wholesale value ranging between one thousand and four thousand dollars. The Boutique was a relatively small store, approximately 20 feet by 40 feet.

Helgesen and Blangiardo opened a business checking account with a branch of Citibank, a subsidiary of Citicorp, in Brooklyn. Helgesen and Blangiardo were the only persons authorized to write checks on this checking account. In January, 1979, the two women applied to Citicorp Sales Management Systems for a merchant's credit card account which would allow them to accept VISA and Master Charge cards in making sales at the Boutique. Their application was accepted. The contract governing their merchant's credit card account permitted the two women to make direct deposits of credit card slips to the Boutique's checking account at a local Citibank branch. The funds generated by credit card sales could then be withdrawn by check on the following business day.

Helgesen and Blangiardo jointly owned and operated the Boutique until July 30, 1979, when Blangiardo terminated her association because of business and personal differences with Helgesen. Helgesen continued to operate the store alone. During the first seven months of 1979, when Blangiardo was involved in running the store, credit card sales ranged between $500.00 and $1500.00 per month. Between August 17, 1979, and September 24, 1979, credit card sales slips totalling more than $220,-000.00 were deposited in the Boutique's checking account, and the funds thus generated were withdrawn by check. While Helgesen was at times accompanied by a man identified as Adeeb "Eddie" Asaad when making these transactions, all of the checks withdrawing these funds were signed by Helgesen, and many of the checks were certified by Citibank at her request. All but three of the more than three thousand slips deposited were fraudulent, created with lost or stolen credit cards, and falsely signed with the cardholders' names.

In January, 1980, the grand jury returned a 24-count indictment against Helgesen for her participation in these fraudulent activities. Counts One through Seventeen charged her with using seventeen specifically identified lost or stolen VISA or Master Charge credit cards to generate more than $1,000 on each card, in violation of 15 U.S.C. § 1644(a). Counts Eighteen through Twenty-four charged Helgesen with bank fraud in violation of 18 U.S.C. § 1014, arising from her deposit of fraudulent credit card invoices which reflected "sales" made with lost or stolen credit cards, to her merchant's credit card account with Citibank.

On July 13, 1980, prior to trial, Judge Neaher held a hearing to determine whether Helgesen was competent to stand trial. This hearing was initiated after the court

was apprised that Helgesen had attempted suicide. Two psychiatrists, one selected by the defense and the other by the Government, testified that she was competent to stand trial. The trial court agreed. Helgesen then waived her right to a jury trial, after extensive questioning by Judge Neaher. Bench trial commenced on July 15. After hearing testimony and receiving closing memoranda from both sides, the judge delivered a verdict convicting Helgesen of Counts One through Seven and Counts Nine through Seventeen,[1] charging fraudulent use of credit cards in violation of 15 U.S.C. § 1644(a), and of Counts Seventeen through Twenty-four, charging bank fraud in violation of 18 U.S.C. § 1014. In June, 1981, Helgesen moved for a new trial, asserting, inter alia, that her waiver of her right to a jury trial was defective because she had ingested two Valium tablets prior to the hearing. Judge Neaher denied this motion. The court imposed the sentence noted above.

On appeal Helgesen, represented by a different attorney, alleges that she did not receive effective assistance of counsel at trial, that she was not competent to stand trial, and that her waiver of jury trial was not knowingly and intelligently made.

## II.

### A. *Ineffective Assistance of Counsel*

■ Helgesen asserts that the representation rendered by her trial counsel, Suzanne Antippas, was so incompetent and ineffective that it resulted in a trial which was a "farce and mockery of justice," the standard governing ineffective assistance of counsel claims in this Circuit. *See United States v. Aulet*, 618 F.2d 182, 187 (2d Cir. 1980); *Indiviglio v. United States*, 612 F.2d 624 (2d Cir. 1979). Helgesen asserts that her trial was a "farce and mockery" because her attorney: (1) spent too much time cross-examining non-essential witnesses about their credibility; (2) failed to focus on the issue of Helgesen's state of mind and

intent; (3) did not make an opening statement or a closing oral argument; (4) did not call several witnesses, including Helgesen; and (5) failed to request a pretrial hearing on the propriety of the pre-indictment photographic identification procedures used. Moreover, Helgesen invites this Court to reject the "farce and mockery" standard and adopt the "reasonable competence" standard followed by several other circuits. *See generally* Note, *Identifying and Remedying Ineffective Assistance of Criminal Defense Counsel: A New Look After United States v. Decoster*, 93 Harv.L. Rev. 752, 757 & n.36 (1980). On the facts of this case we would reach the same conclusion—that Helgesen was not denied the effective assistance of counsel—under either standard.

An evaluation of ineffective assistance of counsel claims usually begins with an examination of the strength of the Government's case. *United States v. Aulet*, 618 F.2d 182, 188 (2d Cir. 1980); *United States v. Bubar*, 567 F.2d 192, 202 (2d Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977). In this case, the evidence of Helgesen's guilt is overwhelming. Thirteen holders of credit cards used to produce the fraudulent credit card slips testified that they never made any purchases at the Brooklyn Heights Home Boutique and that their credit cards were lost or stolen. While credit card sales varied between $500.00 and $1500.00 per month during the first seven months of 1979, credit card sales slips representing approximately $220,000.00 in sales were deposited in the Boutique's checking account by Helgesen during a thirty-five day period. All the credit card slips deposited in the account were in amounts only slightly less than the retail floor limit for the card. Furthermore, several tellers from the Brooklyn Heights Citibank identified Helgesen as the person who conducted the transactions. Finally, a former employee of the Boutique, Consuela DiCiara, testified about the receipt of telephone calls concern-

---

1. Helgesen was acquitted of the charge of fraudulent use of credit cards in violation of 15 U.S.C. § 1644(a) alleged in Count 8 on the ground that there was insufficient evidence that the credit card in question was lost, stolen or fraudulently obtained.

ing the improper use of credit cards and the limited number of credit card sales during the period of her employment from September 11, 1979, through September 21, 1979. As a result, the evidence of Helgesen's active and knowing participation in the fraudulent scheme was simply overwhelming.

Moreover, in general, Helgesen's claims of ineffective assistance involve her attorney's exercise of professional judgment in planning a trial strategy rather than omissions that could, under some circumstances, lay the basis for an ineffective assistance claim. *United States v. Aulet, supra,* at 189. We have often noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy has failed. *Id.* Trial advocacy is an art, and the advocate must be given some latitude in deciding upon an appropriate trial strategy. *See* Note, *supra,* at 766. Trial counsel's cross-examination of the tellers and other witnesses was directed toward showing that Adeeb "Eddie" Asaad had deceived and intimidated Helgesen, and did not simply amount to cross-examination of "non-essential" witnesses, as Helgesen claims. Trial counsel's decision not to call Helgesen or her mother or sister as witnesses was a matter of professional judgment that their testimony would be irrelevant or possibly harmful. Furthermore, since Helgesen waived her right to a jury trial, defense counsel's use of a closing memorandum rather than oral summation could not have been prejudicial.

Finally, trial counsel's failure to request a pre-trial hearing on the pre-indictment photographic identification procedure does not provide a basis for relief since such failure did not cause Helgesen any prejudice. *United States v. Daniels,* 558 F.2d 122, 126 (2d Cir. 1977). Trial counsel examined the postal inspectors extensively on the method for selecting the three photographic arrays which were prepared and displayed, and cross-examined the inspectors and some of the tellers on the details of the identifications. Not only has Helgesen failed to suggest any basis for questioning the propriety of the identification procedure, but the identification of appellant has not been a

material issue in the case. Accordingly, Helgesen's claim that her trial counsel's performance was so ineffective that it rendered the proceedings constitutionally defective is without merit.

### B. *Competence to Stand Trial*

Helgesen claims that Judge Neaher erred in concluding that she was competent to stand trial, asserting that prior to the competency hearing she ingested two Valium tablets. Apart from Helgesen's suicide attempt, Judge Neaher was not presented with any evidence that indicated Helgesen was incompetent to stand trial. Two psychiatrists, as we have noted, one selected by the defense and the other by the Government, testified at the competency hearing that appellant was competent to stand trial, that she understood the nature of the charges against her and could assist in her own defense. *See United States v. Mercado,* 469 F.2d 1148, 1152 (2d Cir. 1972). Even if appellant ingested Valium prior to the competency hearing, it does not follow that this, *ipso facto,* rendered her incompetent to stand trial. *United States ex. rel. Fitzgerald v. LaValle,* 461 F.2d 601 (2d Cir. 1972). The Government's case took nearly two weeks to present, and during this time, the court did not observe evidence of any physical or emotional problems impairing appellant's ability to assist in her own defense. Accordingly, we conclude that the trial court did not err in finding Helgesen competent to stand trial at the pre-trial hearing, or in denying a hearing or a new trial on competency grounds.

### C. *Waiver of Right to Jury Trial*

Helgesen claims that her waiver of her right to a jury trial was not knowingly and intelligently made because it was based on psychological rather than legal considerations. Helgesen cites no authority for the proposition that a waiver of jury trial to avoid the stress of an appearance before a jury may not have been the decision of an informed and competent defendant. The trial court informed appellant that she had a right to a jury trial, and attempted to

explain how waiver of a jury trial would be advantageous or disadvantageous. In light of the trial court's meticulous examination of Helgesen, the court did not err in concluding that she was competent to waive a jury trial and that she knowingly and intelligently waived that right. *Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

Since Helgesen's claims are without merit, we affirm the judgment of conviction entered by Judge Neaher.

### III.

The trial court sentenced Helgesen to concurrent terms of imprisonment of three years on Counts Eighteen through Twenty-four, charging bank fraud in violation of 18 U.S.C. § 1014, as well as on sixteen counts charging the fraudulent use of credit cards in violation of 15 U.S.C. § 1644(a). The Government correctly notes that the maximum authorized sentence for a violation of 18 U.S.C. § 1014 is two years. Accordingly, while we affirm the judgment of conviction, we remand to the district court to correct the sentence on Counts Eighteen through Twenty-four charging bank fraud in violation of 18 U.S.C. § 1014.