UNITED STATES of America, ex rel.
Ramon LaSALLE, Petitioner,

v.

Harold J. SMITH, Superintendent,
Attica Correctional Facility,
Respondent.

No. 84 CV 2044 (ERK).

United States District Court,
E.D. New York.

April 11, 1986.

Ramon LaSalle, pro se.

Elizabeth Holtzman, Dist. Atty., Kings County, Brooklyn, N.Y., for respondent.

## OPINION AND ORDER

KORMAN, District Judge.

Petitioner, Ramon LaSalle, is presently serving a term of imprisonment of twenty-five years to life pursuant to a judgment entered in the Supreme Court of the State of New York convicting him of murder in the second degree. The pro se petition for a writ of habeas corpus, which he has filed pursuant to 28 U.S.C. § 2254, mirrors the brief filed by his assigned counsel on appeal from the judgment of conviction.[1]

Petitioner alleges that he was not adequately and effectively represented by counsel. Specifically, he points to the failure of trial counsel (1) to move to suppress certain evidence, (2) to demand a bill of particulars, (3) to request a so-called "Sandoval" hearing, and (4) to call certain witnesses. Petitioner also alleges that a prosecution witness was improperly precluded from testifying to an exculpatory statement made by petitioner, and that the evidence was insufficient to support his conviction.

Because petitioner's claim regarding the sufficiency of the evidence is plainly without merit,[2] and because the holding excluding petitioner's exculpatory statement as hearsay involves solely a question of the

---

1. The judgment of conviction was affirmed without opinion by the Appellate Division on November 26, 1979 and petitioner's application for leave to appeal to the Court of Appeals was denied on December 20, 1979.

2. The record includes testimony of two witnesses that petitioner confessed to the offense. This testimony, if credited by the jury, along with corroborating circumstantial evidence, plainly constituted evidence sufficient to sustain the conviction.

application of New York law,[3] the only issue which remains to be addressed is petitioner's claim that he was denied the effective assistance of counsel. The principal predicate for the latter claim involves the failure of counsel to move to suppress certain clothing belonging to petitioner. This evidence provided critical corroboration for the principal prosecution witnesses, the credibility of whom was subject to attack.

After reviewing the transcript of the trial and the relevant New York law, it is apparent that petitioner failed to exhaust the only effective remedy available to vindicate the claim he presses here. In *People v. Brown,* 45 N.Y.2d 852, 410 N.Y.S.2d 287, 382 N.E.2d 1149 (1978), the Court of Appeals held that "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10." *Id.* at 854, 410 N.Y.S.2d 287, 382 N.E.2d 1149. This is so because it is frequently impossible to determine from the record on direct appeal whether counsel was justified in taking the course of action which forms the basis for the claim that his conduct fell below the minimum required by the Constitution. *United States v. Aulet,* 618 F.2d 182, 186 (2d Cir.1980). Accordingly, unless the record is clearly sufficient to enable it to resolve the merits of the claim, the New York Court of Appeals, like the Court of Appeals for the Second Circuit, will not entertain claims attacking the adequacy of counsel without an evidentiary exploration of the issue in a collateral proceeding. *People v. Brown, supra; United States v. Aulet, supra; United States v. Cruz,* 785 F.2d 399 (2d Cir.1986).

The record on direct appeal, which is detailed below, demonstrates that this case is precisely the kind of case in which it was "essential that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL § 440.10." *People v. Brown, supra,* 45 N.Y.2d at 854, 410 N.Y.S.2d 287, 382 N.E.2d 1149. Petitioner's failure to seek an evidentiary hearing pursuant to CPL § 441.10 made it impossible for the Appellate Division and the Court of Appeals (to which he unsuccessfully sought leave to appeal) to resolve his claim. Under these circumstances, the petition for a writ of habeas corpus is dismissed for failure of petitioner to adequately exhaust state remedies.

## I

At the trial, certain clothing belonging to the defendant was admitted into evidence. Petitioner's counsel did not file a suppression motion. When petitioner himself moved to suppress the evidence, his motion was denied because "according to defense counsel and the results of his investigation, the so-called common law wife [of] this defendant voluntarily surrendered to the police [the clothing] and since there has been no claim of an illegal seizure, a suppression of physical evidence hearing under these circumstances is not required" (Tr. 13). The "concession" by defense counsel to which this ruling alluded was the statement that (Tr. 10):

[W]hile on the surface it might seem we should make a motion to suppress that, nonetheless his woman voluntarily gave those to the police officers.

A reading of the trial transcript leaves considerable doubt as to the circumstances under which the clothing came into the possession of the police. Despite the statement by defendant's counsel that the defendant's common law wife, Carmen Torres, "voluntarily gave" the clothing to the police, Ms. Torres herself apparently told an investigator retained by defendant's

---

**3.** Petitioner did not argue in his brief in the Appellate Division that the exclusion of this testimony constituted a violation of the Due Process Clause. Instead, he raised a frivolous claim under New York law which is not cognizable on a petition for a writ of habeas corpus. *Mitchell v. Smith,* 481 F.Supp. 22 (E.D.N.Y. 1979), *aff'd,* 633 F.2d 1009 (2d Cir.1980), *cert. denied,* 449 U.S. 1088, 101 S.Ct. 879, 66 L.Ed.2d 814 (1981).

counsel that the police forced their way into the house (Tr. 179):

Q. And you told him, also that the police forced their way into your house with, showed their shields and searched the place; isn't that right?

A. Yes, because Ramon told me to say so.

Q. And where was Ramon at this time?

A. In jail.

Q. And how did you talk to him if he was in jail?

A. Each time I would go to the jail he would say to me not to say anything.[4]

The testimony of Detective DeMartin with respect to the manner in which he obtained the items of clothing offered in evidence is also unclear and contradictory. Before the grand jury, Detective DeMartin testified that he "took a pair" of pants belonging to the defendant from the apartment of Mr. LaSalle and Ms. Torres (Tr. 116). At the trial, however, he testified that the pants and a shirt were brought to him at the station house by Ms. Torres (Tr. 118, 120):

A. According to my DD–5's and my recollection she brought the pants in with my two partners. I got an official record here, my notes.

\*  \*  \*  \*  \*  \*

Q. Now, the shirt that is marked for identification, did you take that from the apartment?

A. No sir, that came to the office with the pants.

Moreover, despite the fact that petitioner's counsel "conceded" that a suppression hearing was not warranted because Ms. Torres had "voluntarily" given the items of clothing to the police, his conduct at the trial was inconsistent with a belief that the clothing had actually been turned over voluntarily. There, petitioner's counsel questioned both Ms. Torres and Detective DeMartin about the "search of the apartment." Specifically, in addition to eliciting

the testimony quoted above, he asked Detective DeMartin whether he had conducted a search of the apartment and whether it was true that Detective DeMartin did not have a search warrant (Tr. 121).

Because the facts surrounding the manner in which the evidence was obtained were never developed at an evidentiary hearing, it is difficult to accept the argument of the District Attorney "that there was no basis on which a motion to suppress could have been granted and thus it was entirely reasonable for counsel to forego this gratuitous procedure," *i.e.*, a suppression hearing (Richter Aff. p. 4). The principal support in the record for the claim of the District Attorney that "Carmen Torres, defendant's common-law wife, voluntarily admitted the police to the apartment and gave them defendant's clothing" (Richter Aff. p. 4) is a concession of petitioner's counsel which the record suggests may have been improvident. Moreover, further inquiry is justified not only by the circumstances discussed above, but by the facts that the consent to the search of a common residence, even if voluntarily given, would not necessarily validate the seizure of property which belonged to the defendant (in the absence of probable cause), and that the validity of the turnover of the defendant's clothing (assuming this occurred) could conceivably depend on the peculiar circumstances of the case. *Coolidge v. New Hampshire,* 403 U.S. 443, 490, 91 S.Ct. 2022, 2050, 29 L.Ed.2d 564 (1971) (upholding turnover of defendant's property occasioned by "a spontaneous, good faith effort by his wife to clear him of suspicion").

On the present state of the record it is impossible to know whether the failure to seek a suppression hearing, and the apparent sabotaging of the petitioner's own efforts to obtain such a hearing, was justified or whether it resulted from the incompetence of counsel. Likewise, it is not possible to effectively resolve all of petition-

---

**4.** The apparent inconsistency between the answer to the first question and the last question was never reconciled.

er's other claims regarding the effective assistance of counsel without the benefit of an evidentiary hearing. The issue presented, therefore, is whether such a hearing should be held here or whether petitioner should be required to exhaust his remedies pursuant to C.P.L. 440.10 before seeking relief by way of habeas corpus.

## II

While petitioner raised the issue of the competency of counsel on the direct appeal from the judgment of conviction and in his application for leave to appeal to the New York Court of Appeals, and while petitioner need not be compelled to make repetitious applications for relief, the relief petitioner sought by way of appeal in this case was simply the wrong remedy given the nature of his claim. The appropriate procedural vehicle, as the Court of Appeals held in *People v. Brown, supra,* was a "collateral or post-conviction hearing brought under C.P.L. 440.10." Surely, the same considerations of policy and practicality which underly the "exhaustion" doctrine are as much implicated when a petitioner chooses the wrong procedure to press his claims as when he fails to make any effort to obtain relief.[5] *Dean v. Smith,* 753 F.2d 239, 241 (2d Cir.1985).

Particularly apposite here is the holding of the Court of Appeals for the Ninth Circuit in *Kellotat v. Cupp,* 719 F.2d 1027 (9th Cir.1983). The petition for a writ of habeas corpus there was filed by a defendant convicted in Oregon. Oregon, like New York, provides "two distinct avenues for review of alleged errors, including constitutional violations." *Kellotat v. Cupp, supra,* 719 F.2d at 1030. Most trial errors must be raised by direct appeal to the Oregon Court of Appeals and are reviewable as a matter of right. A defendant who is unsuccessful there may then petition for discretionary review by the Oregon Supreme Court. The alternative procedure, "[f]or violations of a

defendant's rights that occur after trial, *or that require a further evidentiary hearing for their determination,"* including claims of ineffective assistance of counsel, is a statutory remedy by way of the Oregon Post-Conviction Hearing Act, Or.Rev. Stat. Sections 138.510 to 138.680 (1981). *Id.* (emphasis supplied).

The petitioner in *Kellotat* sought habeas corpus relief on the ground that he had been deprived of his right to counsel on direct appeal from the judgment of conviction, when the Oregon Court of Appeals granted the motion of his assigned counsel to withdraw and denied petitioner's application to appoint substitute counsel. Petitioner had sought and was denied discretionary review by the Supreme Court of Oregon of the order denying his application for the appointment of substitute counsel. The Court of Appeals for the Ninth Circuit held that the application for leave to appeal to the Supreme Court of Oregon, which is normally a prerequisite to seeking relief by way of habeas corpus, did not constitute a sufficient effort to exhaust petitioner's state remedies because the claim he had raised there was not "normally a subject of direct appeal" of the kind which the Oregon Supreme Court exercises its jurisdiction to review. *Kellotat v. Cupp, supra,* 719 F.2d at 1031.

Under these circumstances, the Court of Appeals concluded that, by failing to exhaust his remedies pursuant to the Oregon Post-Conviction Hearing Act, petitioner had not presented the Oregon Supreme Court with a fair opportunity to rule on the merits of his claim. Specifically, it held:

[I]n this case Oregon has provided an adequate and appropriate method for review of Kellotat's claim in the Post-Conviction Hearing Act. We need not decide whether the Oregon Supreme Court was without jurisdiction to entertain Kellotat's petition; it is enough that the state

---

**5.** "The requirement that federal courts not exercise habeas review of a state conviction unless the state courts have had an opportunity to consider and correct any violation of federal law expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

statutory scheme and the Court's own policies militated against reviewing the issue at this procedural stage. That being the case, the mere presentation of the interlocutory petition to the Oregon Supreme Court did not create a fair opportunity for decision, and consequently did not authorize Kellotat to proceed to federal court without seeking a state post-conviction remedy.

719 F.2d at 1031.

This reasoning is equally applicable here. While petitioner raised his claim of ineffective assistance of counsel on direct appeal to the Appellate Division and in his application for leave to appeal to the New York Court of Appeals, "the state statutory scheme and the Court's own policies militated against reviewing the issue at this procedural state," i.e., on the direct appeal. Id. People v. Brown, supra, 45 N.Y.2d at 854, 410 N.Y.S.2d 287, 382 N.E.2d 1149. This being the case, "the mere presentation" of the ineffective assistance of counsel issue on direct appeal "did not create a fair opportunity for decision, and consequently did not authorize [petitioner] to proceed to federal court without seeking a state post-conviction remedy." Kellotat v. Cupp, supra, 719 F.2d at 1031.[6]

The holding of the Court of Appeals for the Second Circuit in Johnson v. Fogg, 653 F.2d 750 (2d Cir.1981), does not compel a contrary result. There, the District Attorney had not argued on direct appeal from the judgment of conviction that the defendant had chosen an inappropriate remedy for the consideration of claims dependent on facts outside the record. Because he failed to do so, the Court of Appeals held that the District Attorney was precluded from seeking dismissal of the petition for a writ of habeas corpus on the ground that petitioner's remedy "is to petition for a writ of

coram nobis, and [that] the continuing availability of this state remedy bars habeas relief." 653 F.2d at 752. In so doing, the Court of Appeals relied on an earlier case in which it had held that, where the District Attorney does not rely on a procedural bar in the Appellate Division—in that case the failure of the defendant to make a timely objection—"this court will not 'guard[ ] state procedural rules more vigilantly than the State itself does'." Id., quoting, Washington v. Harris, 650 F.2d 447, 452 (2d Cir.1981). Significantly, in that case Chief Judge Feinberg observed that, because the District Attorney did not rely on the defendant's procedural default and "answered on the merits" the argument raised by the defendant on direct appeal, the facts "fairly impel us to infer from the Appellate Division's silence that it did pass on the merits of the issue." Washington v. Harris, supra, 650 F.2d at 453. Accordingly, despite Washington's failure to make a timely objection, he was permitted to seek review of the claim in a habeas corpus proceeding.

The present case, unlike the case on which the Court of Appeals relied in Johnson v. Fogg, does not involve a procedural rule regarding the timely assertion of legal claims which the New York judiciary may exercise its discretion to waive, but the failure of a defendant to exhaust the only practical and effective procedure for litigating his claim. Indeed, it is difficult to reconcile the reasoning in Johnson v. Fogg, supra, with an earlier case in which the Court of Appeals, sua sponte, invoked the exhaustion doctrine where it had not been raised by the District Attorney "either below or on appeal." Wilson v. Fogg, 571 F.2d 91, 94 n. 5 (2d Cir.1978).

More significantly, Johnson v. Fogg is distinguishable from the present case be-

---

**6.** This conclusion is supported as well by the holding of the Court of Appeals for the Second Circuit in Dean v. Smith, 753 F.2d 239 (2d Cir.1985). The only difference between the instant case and Dean v. Smith is that the remedy chosen by petitioner to exhaust his claim, a direct appeal, may be appropriate under certain circumstances. In Dean v. Smith, the remedy

chosen by petitioner to exhaust his claim could not, as a matter of law, ever provide the appropriate avenue of relief for the claim he chose to raise. This distinction is not material where, as here, the record shows that a direct appeal was simply the wrong remedy for petitioner's claim. Kellotat v. Cupp, supra, 719 F.2d at 1031.

cause *Johnson* was a case in which it was possible to resolve the issue raised by petitioner without an evidentiary hearing. The Court of Appeals for the Second Circuit did so, and there is every reason to assume that, in the absence of an argument by the District Attorney that petitioner had invoked the wrong remedy, the Appellate Division did so as well. In contrast, here it was not possible for the Appellate Division to rule on the defendant's effective assistance of counsel claim on the record before it. *United States v. Aulet*, 618 F.2d 182, 186 (2d Cir.1980).

Petitioner is, therefore, in the position of seeking habeas corpus relief without having afforded the New York state courts an effective "opportunity to set their own Constitutional houses in order before the power of the federal courts is invoked." *Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir.1977). Under these circumstances, the fact that the District Attorney did not argue (in his brief to the Appellate Division) that a direct appeal was the wrong mechanism for raising an argument dependent on facts outside the record hardly justifies excusing petitioner's obligation to exhaust the most effective procedures and remedies that were available to him under New York law. Accordingly, petitioner is required to raise the effective assistance of counsel claim by way of a motion pursuant to C.P.L. § 440.10 before seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.

The foregoing disposition of the petition makes it unnecessary to consider in detail petitioner's other complaints regarding the effectiveness of counsel, which are insufficient on the present state of the record to warrant relief.[7] Moreover, for the same reason, it is unnecessary to resolve the issue whether, even assuming that petitioner was deprived of the opportunity to invoke the exclusionary rule because of the incompetence of counsel, he may obtain relief by way of habeas corpus. Compare *LiPuma v. Commissioner of the Department of Corrections*, 560 F.2d 84, 93 n. 6 (2d Cir.1977), *cert. denied*, 434 U.S. 861, 98 S.Ct. 189, 54 L.Ed.2d 135 (1977), with *Morrison v. Kimmelman*, 752 F.2d 918 (3d Cir.1985), *certiorari granted*, —— U.S. ——, 106 S.Ct. 59, 88 L.Ed.2d 47 (1985).

Accordingly, the petition is dismissed.

---

**7.** Petitioner alleges that his counsel was ineffective because he did not request a bill of particulars or a "Sandoval" hearing, and because he failed to call certain witnesses. Petitioner's counsel explained on the record that he had already been provided with full discovery before trial and that a bill of particulars was unnecessary. Moreover, the failure to request a *Sandoval* hearing, seeking a limitation on cross-examination regarding his criminal record if he took the stand, *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), would be consequential only if petitioner had taken the stand and was impeached, *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), or, possibly, if he alleged that he would have taken the stand had such a motion been made and granted. Lastly, petitioner's claim that counsel failed to call certain witnesses is undermined by the fact that, at the request of petitioner, his counsel made an application to adjourn the sentencing to give petitioner "a chance to locate and present these witnesses to the court." (Sent.Min. p. 3). The motion to adjourn the sentence was denied without prejudice to an application to set aside the verdict in the event "defendant can come up with ... any newly discovered evidence." (Sent.Min. p. 3). Petitioner's application for a writ of habeas corpus does not indicate when, if ever, he apprised his attorney of the existence of these witnesses or whether he has even located them to date.