■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTONIO ROCHE, Appellant.—Judgment, Supreme Court, Bronx County, rendered December 16, 1974, convicting the defendant after a jury trial of the crime of criminal sale of a controlled substance in the first degree and criminal possession of a controlled substance in the first degree, modified, on the law, to reverse the conviction of the crime of criminal sale of a controlled substance in the first degree and grant a new trial on that count, and otherwise affirmed. Undercover Police Officer Sylvio Lugo, after frequenting certain bars, became acquainted with the defendant Antonio Roche. At one of these encounters, Lugo mentioned to Roche that he would be interested in purchasing heroin, and Roche in turn gave Lugo his telephone number and told him to call when he (Lugo) was ready to make a purchase. Lugo finally contacted Roche and arranged to buy an "eighth," which is approximately four ounces of heroin, at a cost of approximately $4,000. A rendezvous for the sale was set and Lugo arrived at the designated time and place in his car. Roche then directed Lugo to drive downtown, where Roche alighted. He came back a short time later after entering the Les Nanettes Bar for a few minutes to "see the man." When Roche returned, he told Lugo that everything had been arranged and that the purchase price would be $4,000. Lugo agreed to the price and gave the money to Roche, who re-entered Les Nanettes Bar with the money and then returned directing Lugo to still another location for the drug transfer. Arriving at the Cheetah Discotheque, both Lugo and Roche went to the upstairs section to await delivery. Roche went downstairs to look around, and during that time was under the observation of Lugo. Lugo saw a shabbily dressed individual enter the bar, with a newspaper partially concealing a package under his arm. Lugo went to join Roche and was told by Roche to return to his position upstairs. Lugo, though acquiescing, still observed the interaction between

Roche and the third party and saw him transfer a white paper bag from beneath the newspaper to Roche, who in turn slipped the bag into his waistband. Roche then came upstairs and gave the package to Lugo, who also secreted the package in his waistband. Lugo then left the premises, met his backup team, and went to the police lab to voucher the evidence. About 10 days after the transaction, Lugo called Roche and complained that the heroin was of inferior quality. Roche responded by saying that Lugo should have contacted him immediately. These facts as elicited at trial on the People's case were essentially uncontradicted. Defense counsel requested that the jury be instructed on the issue of agency, which request was denied. We find that, under the circumstances of this case, such an instruction should have been given and failure to do so mandates reversal and remand for a new trial. It is undisputed that one who acts solely as the agent of the buyer cannot be convicted of the crime of selling narcotics *(People v Lindsey,* 16 AD2d 805, affd 12 NY2d 958). In the case at bar, the defendant upon receipt of the money from Lugo took it directly into Les Nanettes Bar where contact had first been made with "the man." Prior to speaking to "the man," Roche could not even quote a price to Lugo. Furthermore, it was Lugo who approached Roche to obtain the drugs for him. This evidence could indicate an agency relationship between Roche and Lugo. On the other hand, Lugo's complaint to Roche about the quality of the drugs would indicate a buyer-seller relationship. Determination of the existence of an agency relationship should have been submitted to the jury *(People v Fortes,* 24 AD2d 428). However, we find that, with regard to the conviction for criminal possession of a controlled substance in the first degree, there was ample evidence adduced. Roche was physically in possession of the heroin, albeit for a short period of time, and therefore the conviction for possession of a controlled substance should remain undisturbed *(People v Diaz,* 54 AD2d 639; *People v Garcia,* 50 AD2d 730). Concur—Evans and Lane, JJ.; Silverman, J., concurs in a memorandum and Kupferman, J. P., dissents in part in a memorandum, as follows: Silverman, J. (concurring). I concur for reversal of the conviction of criminal sale of a controlled substance in the first degree. I agree with Justice Kupferman that in many cases, probably including this one, the defense of agency is a ploy. But in criminal cases, all questions of fact are for the jury, and the court cannot take any of them away from the jury. *(People v Walker,* 198 NY 329; but cf. *People v Ianniello,* 36 NY2d 137, 145.) The difficulty, it seems to me, is rather with the judicially created defense of agency for the buyer. Criminal sanctions should not depend on subtle legal distinctions of the law of agency. The jury's verdict of guilty or not guilty should not depend on their resolution of the difficult legal questions whether a particular relationship makes the defendant an agent for the buyer, or on the other hand, an agent for the seller, an agent for both parties, an independent contractor, or a principal. These distinctions are particularly subtle when we deal with a consensual "victimless" crime like a sale of narcotics where everybody—seller, buyer, and intermediaries—is trying to further the transaction. A defendant who engages in accessorial conduct within the meaning of section 20.00 of the Penal Law by substantially aiding a narcotics transaction involving thousands of dollars knows perfectly well that he is committing a crime. He should not have to consult counsel to know in advance whether his conduct is legal because perhaps a jury might say that in contemplation of law he is an agent for the buyer. One can perhaps sympathize with someone who obtains narcotics at the request of a friend for the friend's personal use. But the defense of agency does not appear to be so limited. And as the defense is

judicially created, on the present state of the authorities, I think that only the Court of Appeals can limit it. Kupferman, J. (dissenting in part). I would affirm. Unless we are prepared to direct that the "agency" charge be given in every narcotics case, there is no reasonable basis for requiring it in this case. The issue of agency should have a rational basis and not simply be a ploy.