The UNITED STATES of America ex rel. Antonio ROCHE, Relator-Appellant,

v.

Charles J. SCULLY, Superintendent, Green Haven Correctional Facility, Respondent-Appellee.

No. 1063, Docket 83-2314.

United States Court of Appeals, Second Circuit.

Argued April 10, 1984.

Decided July 3, 1984.

Robert Sadowski, Kew Gardens, N.Y., for relator-appellant.

Stuart L. Sanders, Asst. Dist. Atty., Bronx, N.Y. (Mario Merola, Dist. Atty., Bronx County, Peter D. Coddington, Asst. Dist. Atty., Bronx, N.Y., of counsel), for respondent-appellee.

Before LUMBARD, MANSFIELD and WINTER, Circuit Judges.

MANSFIELD, Circuit Judge:

Antonio Roche appeals from an order of the Southern District of New York, John M. Cannella, *Judge*, denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Roche was convicted in the Supreme Court of the State of New York, Bronx County, of two counts stemming from his possession and sale of heroin. On appeal his counsel successfully argued that his conviction on one count charging sale of heroin must be reversed and remanded for a new trial because of the trial court's failure to charge the jury on the defense's theory that Roche was acting as the agent of an undercover officer and that he was purchasing heroin on the officer's behalf rather than selling it to the officer. His conviction on the count charging possession of heroin, however, was affirmed. In this collateral proceeding Roche argues that his detention is unlawful because Bronx County had no jurisdiction over the possession count and because his appellate counsel's failure to raise the jurisdictional argument in the court constituted ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. The district court rejected both of Roche's contentions. We affirm.

Roche was indicted on January 29, 1974, by a Bronx County grand jury on charges of Criminal Sale of a Controlled Substance

in the First Degree, N.Y.Penal Law, § 220.-43 (McKinney 1980), and Criminal Possession of a Controlled Substance in the First and Third Degrees, N.Y.Penal Law §§ 220.-21 and 220.16. The evidence at the state court jury trial, which began on November 4, 1974, showed that on November 1, 1973, Roche met undercover police officer Sylvio Lugo at 170th Street and Morris Avenue in the Bronx; the meeting was pursuant to an earlier agreement that Roche would obtain heroin for Officer Lugo. The men proceeded to the "Les Nanettes Bar," in Manhattan, New York County, where Officer Lugo gave Roche $4,000 cash. The men then proceeded to the "Cheetah Discotheque," also in Manhattan, where Roche surreptitiously received a package of heroin from a shabbily dressed individual, and passed it on to Lugo. On the merits the evidence of guilt of unlawful possession introduced by the state was overwhelming.

Roche did not call any witnesses in his defense. After closing arguments by both sides, however, his trial counsel moved to dismiss the entire indictment for want of jurisdiction in Bronx County, arguing that the crime, if any, had been committed in New York County. Under New York Criminal Procedure Law § 20.40, jurisdiction is proper in the county where an element of the crime occurs. Counsel did not distinguish between the sale and possession counts. The trial judge denied the motion because one element of the sale— the agreement to sell—took place in Bronx County.

On November 13, 1974, the jury returned guilty verdicts on all three counts. The trial court dismissed the third count (third degree possession) as a lesser included offense, and sentenced Roche to two concurrent terms of imprisonment of from 15 years to life. Roche appealed to the Appellate Division, First Department, on January 3, 1975, where he was represented by New York Legal Aid Society appointed counsel who, in a brief dated April 1977, urged several grounds for reversal, including that the trial court had erred in refusing to charge the jury on the "agency defense." However, he did not raise the jurisdictional issue alluded to by trial counsel at the close of the trial.

On July 12, 1977, the Appellate Division reversed Roche's conviction for *sale* of heroin on the ground that the trial court erred in refusing to charge the jury on the "agency" defense. The Appellate Division ruled that "one who acts solely as the agent of the buyer cannot be convicted of the crime of selling narcotics," and that the evidence in Roche's case was sufficient to raise a factual issue of agency that should have been submitted to the jury. *People v. Roche*, 58 A.D.2d 783, 784, 396 N.Y.S.2d 367, 368 (1st Dept.1977). However, the court affirmed Roche's conviction for possession of heroin.

Both the state and Roche appealed from the Appellate Division's decision. In a brief served on the District Attorney's office on March 10, 1978, Roche's counsel pursued only the agency argument, which was also the sole issue raised by the state with respect to the sale count. Oral argument was held on March 29, 1978, and on June 15, 1978, the Court of Appeals affirmed the Appellate Division in all respects. *People v. Roche*, 45 N.Y.2d 78, 407 N.Y.S.2d 682, 379 N.E.2d 208 (1978). The United States Supreme Court denied Roche's petition for a writ of certiorari on November 6, 1978. *Roche v. New York*, 439 U.S. 958, 99 S.Ct. 359, 58 L.Ed.2d 350 (1978).

Since Roche had been convicted on the possession count, the District Attorney decided not to bring the sale count on for retrial. On remand from the Court of Appeals, the Supreme Court, Bronx County, on July 14, 1978, accordingly granted the state's motion to dismiss the sales count.

By motion dated February 4, 1980, Roche commenced the first of four collateral attacks upon his conviction. He first sought to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 on the ground that Bronx County lacked jurisdiction over the possession count. The state responded that Roche had waived the jurisdictional argument by failing to pursue

it on his direct appeal and, in the alternative, that jurisdiction was proper in Bronx County. The motion was denied without opinion on March 6, 1980. On May 1, 1980, Roche was denied leave to appeal to the Appellate Division, a decision that was not appealable to the Court of Appeals.

Roche then filed his first petition for a writ of habeas corpus in the Southern District of New York, arguing that Bronx County lacked jurisdiction to try him for criminal possession of the heroin. By order dated September 8, 1981, Judge Cannella found that Roche was barred by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), from raising the jurisdictional claim in a federal proceeding because he had failed to pursue it in accordance with state procedural rules and had not shown good cause for that failure.

Roche did not appeal from Judge Cannella's order. Instead, he filed a second state court motion on December 10, 1981, this time claiming that his Sixth Amendment right to counsel had been violated by his appointed appellate counsel's failure to raise the jurisdictional argument in the Appellate Division. On December 21, 1981, the Supreme Court, Bronx County, denied Roche's motion "with leave to renew in the proper forum." On July 9, 1982, appellant sought permission to file an untimely application for leave to appeal to the Appellate Division. Appearing prose, Roche stated that the retained attorney representing him in the second coram nobis petition—the third attorney to appear on his behalf since his indictment—had not notified him of the denial of the motion, or of his right to seek appeal. In the motion for permission to file an untimely application for leave to appeal, Roche again presented his claim that he had not received effective assistance of counsel. Leave to appeal was denied on August 5, 1982.

On November 8, 1982, Roche returned to the Southern District of New York, filing his second petition in that court for a writ of habeas corpus. He asked the district court to reconsider its prior ruling on the jurisdictional claim in view of *Washington v. Harris*, 650 F.2d 447, 451–52 (2d Cir. 1981), *cert. denied*, 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982), and also argued that he had received ineffective assistance of counsel on appeal of his conviction in the state court. In an order dated April 25, 1983, Judge Cannella denied the petition on the grounds that Roche had not exhausted his ineffective assistance of counsel claim in the state courts. After a motion for reconsideration, however, Judge Cannella reversed himself on September 15, 1983, finding that the Appellate Division had addressed the merits of Roche's *pro se* Sixth Amendment claim when it denied Roche leave to appeal on the ground that "no question of law or fact" had been presented that deserved review. Judge Cannella then denied the petition on the merits, finding that the jurisdictional claim was still barred for failure to comply with state procedure and that Roche had received adequate assistance from counsel on appeal. Judge Cannella noted that appellate counsel had obtained a reversal on one of the counts, and that the principal New York case supporting Roche's jurisdictional claim had not been decided at the time of his appeals.

## DISCUSSION

■ Roche's first claim—that the Supreme Court, Bronx County, lacked jurisdiction over the possession count—need not long detain us. Putting aside the issues of *res judicata* and *Wainwright v. Sykes*, the jurisdictional argument must be rejected because it fails to raise an issue of federal law, which is an essential prerequisite to habeas relief. Although New York has chosen to style § 20.40 of its Criminal Procedure Law in terms of "jurisdiction," the statute is in fact concerned with venue. The State of New York clearly has jurisdiction over the offenses charged. A violation of its laws allocating that jurisdiction among its various counties does not create a federal constitutional issue. As we stated in *United States v. Mancusi*, 415 F.2d 205, 209 (2d Cir.1969), "no federal court to our knowledge has ever granted a writ

where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law." In *Wills v. Egeler,* 532 F.2d 1058, 1059 (6th Cir.1976), the court dismissed the argument Roche makes as "frivolous and completely without merit." That assessment applies here as well.

■ Roche's Sixth Amendment claim, however, raises a more difficult question. The principles governing our analysis of the claim have recently been explicated in detail by the Supreme Court in *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The proper standard for determining whether counsel's service violated the client's Sixth Amendment right to effective assistance is whether it was reasonable "under prevailing professional norms," *id.* 104 S.Ct. at 2065, and, if deficient, whether the deficiency was so serious that it prejudiced the defendant by presenting the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 2064. The Court went on to state that:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. *Engle v. Isaac,* 456 U.S. 107, 133–134, 102 S.Ct. 1558, 1574–1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See *Michel v. Louisiana, supra,* [350 U.S. 91] at 101 [76 S.Ct. 158 at 164, 100 L.Ed. 83 (1955)]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y. U.L.Rev. 299, 343 (1983).

"The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.

"Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that

counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* 104 S.Ct. at 2066.

Application of these principles leads us to the conclusion that the petitioner in this case has not stated facts entitling him to collateral relief on the ground that his state court appellate counsel's services were so ineffective that they deprived him of effective assistance in violation of his Sixth Amendment rights. In light of *People v. Cullen*, 65 A.D.2d 594, 409 N.Y.S.2d 263 (2d Dept.1978), *rev'd on other grounds*, 50 N.Y.2d 168, 428 N.Y.S.2d 456, 405 N.E.2d 1021 (1980), it does appear, as appellant contends, that Bronx County lacked jurisdiction over the possession charge, at least if it had not been joined with a sale count properly brought in Bronx County. *Cullen*, however, was not decided until October 1978, several months *after* Roche's appeals were exhausted. Moreover, contrary to assertions in Roche's brief, the venue defect on which he now relies would not have been readily apparent during the 1974–1978 period. Indeed, our research yields only one case that could have. been used to construct the argument Roche now contends his counsel should have made. *See People v. King*, 61 A.D.2d 1035, 403 N.Y.S.2d 109 (2d Dept.1978), which was the sole case cited as support for the Appellate Division's later decision in *Cullen*. For a number of reasons, however, we are persuaded that his counsel's apparent failure to discover the *King* case did not violate the standards of *Strickland*. Nor does it appear that a reasonably competent attorney, faced with the tactical considerations presented by this case, could reasonably have decided that an argument based on *King* was worth pursuing.

First, it is not clear that the legal community was even aware of *King* at the time this case was being appealed. King was decided on March 20, 1978. By that time the Appellate Division had already reversed Roche's sale conviction and affirmed his conviction of possession. Furthermore, Roche's brief to the Court of Appeals had already been filed and served upon the District Attorney's office. Oral argument before the Court of Appeals was held on March 29, 1978, only nine days after the Appellate Division decided *King*. There is no evidence that the *King* opinion (which is less than a page in length and cites no legal precedent) attracted any attention in the legal community or was by its nature a precedent of considerable importance that should have been known to counsel.

Second, even if we were to assume that Roche's appellate counsel was aware of *King*, we do not believe that a "reasonably competent" attorney would view it as dictating the same result in this case. The facts in *King*, unlike those here, were sufficiently unusual to make out a strong case for holding that the defendants there were clearly prosecuted in the wrong county, whereas, prior to *Cullen*, the same could not be said of the present case. The defendants Mr. and Mrs. King were charged in Kings County with criminal sale of heroin. An undercover police officer initiated the sale by approaching a suspected drug dealer, Ms. Fowler, seeking to purchase narcotics. Fowler had no narcotics, but offered to help the officer find some. Fowler and the officer then drove to a bar in Kings County. While the officer remained outside, Fowler entered and spoke to Mr. King. Fowler explained to Mr. King that a friend of hers wanted to purchase drugs; King replied that he had no drugs, but would be willing to help find some. At that point, Fowler returned to the car where the undercover officer was waiting. Mrs. King, who had been in the bathroom during the conversation between her husband and Fowler, now joined her husband in their car. Neither of the Kings had yet been introduced to the officer or had any conversation with him, and Mrs. King did not even know that Fowler and Mr. King had discussed a drug transaction.

Fowler and the officer followed the Kings' vehicle into Manhattan. It was not until they arrived at 116th Street in Manhattan that the Kings finally met the officer, and Mrs. King learned the purpose of the trip. At that time the officer gave the Kings cash and they searched the neighborhood, eventually returning with heroin for the officer. Mr. King received $20 as a gratuity.

It was on these extremely unusual facts that the Appellate Division, Second Department, in *King* ruled that Kings County lacked jurisdiction to prosecute the sale. It would be far from obvious to the most competent practitioner that the result in *King* could be extended beyond the facts on which it was based; i.e., to a situation such as this where Roche met the officer in the Bronx and arranged for the sale there. In short, we are skeptical that counsel could have foreseen *Cullen* from the Appellate Division's result in *King*.

Assuming *arguendo* that counsel knew of *King* and speculated as to whether it might be extended to the facts of Roche's case, he could reasonably conclude that since Bronx County indisputably had jurisdiction over the prosecution for the alleged sale in that county, the Court of Appeals might decide that Bronx County had "pendent" jurisdiction over the possession charge as part and parcel of the sale. Under Art. 6, § 1, of the New York State Constitution the Supreme Court of the state is a statewide court of general jurisdiction, not an "aggregation of separate courts sitting in the several counties," and "the jurisdiction of its justices is co-extensive with the state." *Schneider v. Aulisi,* 307 N.Y. 376, 381, 121 N.E.2d 375 (1954) (citations omitted). Although New York's Criminal Procedure Law, § 20.40, allocates the exercise of its jurisdiction among counties as a matter of venue, improper venue can be waived. Furthermore, one must not overlook the important fact that in the present case counsel had succeeded in reversing the conviction for selling heroin, a reversal which might not have been obtained in the Appellate Division if Roche's presentation had been less "focused" than

it was, in view of the overwhelming evidence of his guilt of criminal possession. Roche's counsel might reasonably have been hesitant to "shift gears" and divert the court's attention from an argument that had prevailed in the Appellate Division on the sale count, lest the Court of Appeals reverse the Appellate Division and affirm the convictions on both counts. As the Supreme Court recently stated, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes,* — U.S. —, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983).

Viewing all the above-mentioned factors, we conclude that Roche did receive reasonably competent representation on appeal. The *King* case, on which the jurisdictional argument is predicated, simply did not compel the conclusions Roche would ascribe to it, even were we to assume that it was circulated in an exceedingly rapid manner. There was nothing unreasonable in the approach counsel took toward the appeals, an approach which proved partly successful. To hold otherwise would be to indulge in the very kind of hindsight, with its distorting effects, condemned by the Court in *Strickland* as well as to ignore the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *See Strickland, supra,* 104 S.Ct. at 2066; *Trapnell v. United States,* 725 F.2d 149 (2d Cir.1983).

Accordingly, we affirm the order of the district court denying Roche's petition for a writ of habeas corpus.

WINTER, Circuit Judge, concurring in part and dissenting in part:

I concur fully in the ruling that the "jurisdiction" issue does not raise a federal constitutional claim. However, I respectfully dissent from the conclusion that a reasonably competent New York attorney would not have pressed the jurisdiction ar-

gument on appeal.[1] In my view, the present record is inadequate to support that conclusion, and I would remand in order to supplement the record with appropriate evidentiary materials and to conduct whatever other proceedings seem appropriate.

This case is unusual in that all agree that Roche's conviction on the possession count, the sole grounds for his present incarceration, would have been reversed had the jurisdiction argument been made by his appellate counsel. While the majority may be correct in asserting that the potential success of that argument would not have been reasonably apparent to a New York practitioner at the time of Roche's appeal, the present record allows that conclusion to be drawn only upon speculation. That record consists only of the pleadings and the cover page and index of the two briefs filed on Roche's behalf in New York appellate courts. We do not have before us, therefore, any of the briefs filed on Roche's behalf or a verified statement by Roche's attorney as to why the jurisdiction argument was never made. The record also contains no evidence of the practice of the New York defense bar as to the jurisdiction issue. Nor do we have the briefs filed in *People v. King,* 61 A.D.2d 1035, 403 N.Y.S.2d 109 (2d Dept.1978) and *People v. Cullen,* 65 A.D.2d 594, 409 N.Y.S.2d 263 (2d Dept.1978), *rev'd on other grounds,* 50 N.Y.2d 168, 428 N.Y.S.2d 456, 405 N.E.2d 1021 (1980), which might inform us as to that practice.

Even more unsettling is the fact that, in rebutting Roche's claim that the jurisdiction argument has federal constitutional overtones, the state in its brief before us has relied upon *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) and argued that Roche's counsel had "cause" to raise the issue in the state appellate courts. Brief of Appellee, p. 15. The state thus flatly asserts, contrary to the majority's conclusion, that *King* was

published in the New York Law Journal before the argument in *Roche* and would have alerted competent counsel to the issue. *Id.* The state also attributes significance to the fact that the jurisdiction issue was raised in the trial court by Roche's first attorney. *Id.* at 15.

Finally, the assertion that Roche's lawyer "winnowed out" the jurisdiction argument so as to bolster the agency claim on appeal is wrong as a factual matter. The agency argument was strong only as to the sale conviction. What Roche needed was a winning argument on the possession count.

I fully sympathize with my colleagues' reluctance to accord a hearing upon a claim of lack of adequate representation absent cause to believe that a colorable claim exists. In the instant case, however, such cause exists in the acknowledged fact that Roche had a winning argument which was not made. That seems to me sufficient to require that some record be established to support the proposition that a reasonably competent New York practitioner would not have made that argument at that time, an issue which does not require an extensive evidentiary hearing. Roche's attorney asserted at oral argument before us that the claim which succeeded in *Cullen* was routinely and successfully made by the criminal defense bar in New York. I think he should have an opportunity to show that through transcripts, pleadings, and decisions in the New York trial courts. I would also note that, since the majority's conviction is so obviously based on their view that the decision in *Cullen* was unexpected because it was wrongly decided, courtesy as well as comity calls upon us to be confident of that conclusion before drawing it.

---

1. My decision assumes that *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Trapnell v. United States,* 725

F.2d 149 (2d Cir.1983) apply retroactively to the present case.