**Garrett Brock TRAPNELL,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

**No. 66, Docket 82–2025.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 14, 1983.

Decided Dec. 19, 1983.

[*] Honorable Charles H. Tenney, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

L. Kevin Sheridan, Brooklyn, N.Y., Asst. U.S. Atty., E.D.N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for defendant-appellee.

William C. Pelster, New York City (Robert L. Hubbard, of counsel), for plaintiff-appellant.

Before FEINBERG, Chief Judge, and LUMBARD and NEWMAN, Circuit Judges.

FEINBERG, Chief Judge:

Garrett Brock Trapnell appeals from an order of the United States District Court for the Eastern District of New York, Jacob Mishler, J., denying Trapnell's petition under 28 U.S.C. § 2255 to vacate his 10-year old conviction. Appellant argues that the assistance of counsel that he received at the trial was ineffective. Judging counsel's performance by the "reasonably competent assistance" standard, which we adopt in this opinion, we affirm the judgment of the district court.

## I.

Appellant Trapnell was found guilty in May 1973 after a jury trial before then Chief Judge Mishler on all three counts of an indictment charging him with aircraft piracy, 49 U.S.C. § 1472(i), interference with an aircraft flight crew, 49 U.S.C. § 1472(j), and possession of a firearm in the commission of a federal crime, 18 U.S.C. § 924(c)(2). All three charges stemmed from Trapnell's hijacking of a TWA airliner on a scheduled flight between Los Angeles and New York, in January 1972. The basic facts relating to the hijacking are set forth in this court's opinion affirming Trapnell's conviction. See *United States v. Trapnell,* 495 F.2d 22 (2d Cir.), cert. denied, 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974). We presume general familiarity with that opinion. We note, however, that Trapnell was tried twice: his first trial, before Judge Rosling, resulted in a mistrial because the jury was unable to reach a verdict; his second trial, before Judge Mishler, resulted in his conviction. In both trials, Trapnell presented an insanity defense.

In this collateral attack on his conviction, Trapnell points out that three witnesses who were not called to testify at the second trial—Drs. Stanley Portnow, James Cravens and David Hubbard—had had the most sustained contact with Trapnell immediately after the hijacking and were therefore in the best position to testify about his insanity at the time of the crime. Trapnell argues that the psychiatrists who testified at the second trial did not agree on the question of his insanity, and that if Drs. Portnow, Cravens and Hubbard had testified, the jury would have been likely to find that the government had not proven his sanity beyond a reasonable doubt. In addition, Trapnell argues that his attorney at the second trial relied too heavily on subpoenas to compel testimony, and did not adequately establish the professional qualifications of the expert witnesses. According to appellant, at his second trial he was not accorded

his Sixth Amendment right to "effective assistance of counsel." Appellant also urges us to reject the "farce and mockery" standard used by this court to determine whether the assistance of counsel at a criminal trial was "effective," and to adopt instead a standard of "reasonable competence." That issue, as well as the merits of the appeal, was briefed and argued by both parties.

## II.

Before examining appellant's specific contentions, we discuss the appropriate standard of competence for a defendant's attorney in a criminal trial. In the Second Circuit, that standard has been governed for over thirty years by the rule laid down in *United States v. Wight,* 176 F.2d 376, 379 (2d Cir.1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950): "A lack of effective assistance of counsel must be of such a kind as to shock the conscience of the court and make the proceedings a farce and mockery of justice." In *Wight,* this court adopted the standard first formulated by Judge Thurman Arnold for the D.C. Circuit in *Diggs v. Welch,* 148 F.2d 667, 670 (D.C. Cir.), cert. denied, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945). By 1962, nine of the eleven circuits were applying the *Diggs* "farce and mockery" standard. See *In re Ernst,* 294 F.2d 556, 558 (3d Cir.), cert. denied, 368 U.S. 917, 82 S.Ct. 198, 7 L.Ed.2d 132 (1961); *Snead v. Smyth,* 273 F.2d 838, 842 (4th Cir.1959); *O'Malley v. United States,* 285 F.2d 733, 734 (6th Cir.1961); *United States ex rel. Feeley v. Ragen,* 166 F.2d 976, 980–81 (7th Cir.1948); *Johnston v. United States,* 254 F.2d 239, 240 (8th Cir. 1958); *Cofield v. United States,* 263 F.2d 686, 689 (9th Cir.), rev'd per curiam on other grounds, 360 U.S. 472, 79 S.Ct. 1430, 3 L.Ed.2d 1531 (1959); *Frand v. United States,* 301 F.2d 102, 103 (10th Cir.1962). The two remaining circuits adopted the "farce and mockery" standard in 1965 and 1970, respectively. See *Williams v. Beto,* 354 F.2d 698, 704 (5th Cir.1965); *Bottiglio v. United States,* 431 F.2d 930, 931 (1st Cir. 1970) (per curiam).

The resulting uniformity in the standard of competence of counsel was disrupted in 1970, when the Fifth Circuit stated: "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." *Caraway v. Beto,* 421 F.2d 636, 637 (5th Cir.1970) (per curiam) (quoting *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), modified, 289 F.2d 928 (5th Cir.), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961)). That same year, the Third Circuit replaced the "farce and mockery" standard with a standard of "normal competency." *Moore v. United States,* 432 F.2d 730, 737 (3d Cir. 1970) (in banc). Similarly, the D.C. Circuit, apparently the original architect of the "farce and mockery" test, held in 1973 that "a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent and conscientious advocate." *United States v. DeCoster,* 487 F.2d 1197, 1202 (D.C.Cir.1973); see also id. at 1203 ("Counsel should be guided by the American Bar Association Standards for the Defense Function."). Since 1970, every circuit except this one has adopted a "reasonably competent assistance" standard, in one of its many formulations. See *United States v. Bosch,* 584 F.2d 1113, 1120–21 (1st Cir. 1978) ("reasonably competent assistance"); *Marzullo v. Maryland,* 561 F.2d 540, 543–44 (4th Cir.1977), cert. denied, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) ("normal competency"); *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974) ("reasonably effective assistance"); *United States ex rel. Williams v. Twomey,* 510 F.2d 634, 641 (7th Cir.), cert. denied, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975) ("minimum standard of professional representation"); *United States v. Easter,* 539 F.2d 663, 666 (8th Cir.1976) ("customary skills and diligence" of "a reasonably competent attorney"); *Cooper v. Fitzharris,* 586 F.2d 1325, 1328 (9th Cir.1978) (in banc), cert. denied, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979) ("reasonably competent and effective" assistance); *Dyer v. Crisp,* 613 F.2d

275, 278 (10th Cir.) (in banc), cert. denied, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980) ("reasonably competent assistance"). The Eleventh Circuit, which adopted Fifth Circuit law as precedent in *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (in banc), recently reaffirmed the Fifth Circuit's "reasonably effective assistance" standard in *Douglas v. Wainwright,* 714 F.2d 1532, 1553 (11th Cir.1983).

Similarly, only a few state courts now apply the "farce and mockery" standard. See Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Colum. L.Rev. 1053, 1058 n. 41 (1980). In particular, all three states within this circuit have adopted the new standard for assessing the competence of counsel in criminal trials. In *People v. Droz,* 39 N.Y.2d 457, 463, 384 N.Y.S.2d 404, 348 N.E.2d 880 (1976), the New York Court of Appeals vacated a conviction, stating that "we cannot say that the representation defendant received was adequate or effective in any meaningful sense of the word." This case was later interpreted as abandoning the "farce and mockery" standard that had prevailed in the state. See *People v. Aiken,* 45 N.Y.2d 394, 398, 408 N.Y.S.2d 444, 380 N.E.2d 272 (1978). New York now appears to follow a "reasonable competence" standard. See *Barnes v. Jones,* 665 F.2d 427, 434 (2d Cir. 1981), rev'd on other grounds, —— U.S. ——, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Vermont adopted a "customary skill and knowledge" standard in 1975. See *In re Cronin,* 133 Vt. 234, 240, 336 A.2d 164 (1975). Connecticut embraced a "reasonable competence" standard in 1976. See *State v. Clark,* 170 Conn. 273, 365 A.2d 1167, 1172 (Conn.), cert. denied, 425 U.S. 962, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976).

The Second Circuit is now the only circuit court that has wrestled with this problem and not embraced the "reasonably competent assistance" standard for trials in criminal cases. Members of this court, however, have repeatedly expressed their displeasure or concern over continuing reliance on the *Wight* rule. For example, Judge Oakes recently urged that "the Second Circuit at long last join the rest of the federal judici-

ary, as well as the leading state courts of last resort, in abandoning the contentless, outmoded farce and mockery rule." *Langone v. Smith,* 682 F.2d 287, 289 (2d Cir. 1982) (Oakes, J., dissenting from denial of rehearing in banc), cert. denied, —— U.S. ——, 103 S.Ct. 739, 74 L.Ed.2d 961 (1983); see also *Rickenbacker v. Warden,* 550 F.2d 62, 67–68 (2d Cir.1976) (Oakes, J., dissenting), cert. denied, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977). Similarly, Judge Mansfield has called for a re-evaluation of the "farce and mockery" standard. *Indiviglio v. United States,* 612 F.2d 624, 632 (2d Cir.1979) (Mansfield, J., concurring), cert. denied, 445 U.S. 933, 100 S.Ct. 1326, 63 L.Ed.2d 768 (1980); *Bellavia v. Fogg,* 613 F.2d 369, 375–76 n. 1 (2d Cir.1979) (Mansfield, J., concurring and dissenting). And, referring to this standard, Judge Kaufman warned against "fall[ing] prey to the pitfalls of rigid adherence to phrases and formulas which seem to gain strength by ritualistic repetition in *haec verba* in case after case." *United States ex rel. Marcelin v. Mancusi,* 462 F.2d 36, 46 (2d Cir.1972) (Kaufman, J., dissenting), cert. denied, 410 U.S. 917, 93 S.Ct. 977, 35 L.Ed.2d 279 (1973).

In addition, members of the Supreme Court have expressed their displeasure with the resulting conflict among the circuits. In 1978, when a few circuits still subscribed to the "farce and mockery" standard, Justice White argued that the Court "should attempt to eliminate disparities in the minimum quality of representation required to be provided to indigent defendants." *Maryland v. Marzullo,* 435 U.S. 1011, 1012–13, 98 S.Ct. 1885, 1886–87, 56 L.Ed.2d 394 (1978) (White, J., joined by Rehnquist, J., dissenting from denial of certiorari). Last year, Justice White stated that while it was possible that a trial attorney's failure to offer exculpatory testimony given at a suppression hearing and his failure to call favorable witnesses may have "satisfied the more exacting standard the [Second Circuit] has rejected ... there was no holding to that effect, and that question should be answered by the [Second Circuit] after the level of minimum competence required by

the Sixth Amendment is determined by this Court." *Romero v. United States,* 459 U.S. 926, 103 S.Ct. 236, 237, 74 L.Ed.2d 187 (1982) (White, J., dissenting from denial of certiorari).

But although this court has not explicitly abandoned the "farce and mockery" for the "reasonably competent assistance" standard, it has justified its failure to reconsider the standard by pointing out that the result in the cases before it would have been the same under either formulation. See *United States v. Daniels,* 558 F.2d 122, 126 (2d Cir.1977); *Rickenbacker v. Warden,* supra, 550 F.2d at 66; cf. *Indiviglio v. United States,* supra, 612 F.2d at 632 (Mansfield, J., concurring). For example, in *Rickenbacker,* Judge Smith, the author of the *Wight* opinion, stated that "[i]t may be that this court should reconsider the standard set forth in *Wight.*" He added, however, that "we need not decide this issue now, for we conclude that the performance of Rickenbacker's counsel does not fail to meet any of the suggested standards, all of which involve the heavy burden of establishing incompetence." 550 F.2d at 66.

As we show below, in this case too the assistance that defendant received would be deemed "effective" under either standard. But we think that the time has come to declare that "effective" assistance means "reasonably competent assistance," which we regard as a shorthand for the standard that the quality of a defense counsel's representation should be within the range of competence reasonably expected of attorneys in criminal cases. See *United States v. Bosch,* supra, 584 F.2d at 1121; *Marzullo v. Maryland,* supra, 561 F.2d at 543–45. It would have been ideal, of course, to adopt the "reasonably competent assistance" standard in a case in which the defense counsel's representation fell below that benchmark but nonetheless did not make the trial a "farce and mockery." Undoubtedly, such a case would best elucidate the different nuances of the two standards. But given the manner in which our court has applied the "farce and mockery" standard in recent years, we are unsure that such a case will ever be before us.

First, we have repeatedly applied both standards in recent years and never found that the result of a case hinged on the choice of a particular standard. See *United States v. Taylor,* 562 F.2d 1345, 1360 (2d Cir.), cert. denied, 432 U.S. 909, 97 S.Ct. 2958, 53 L.Ed.2d 1083 and 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124 (1977); *United States v. Medico,* 557 F.2d 309, 318 & n. 15 (2d Cir.), cert. denied, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977); *United States v. Daniels,* supra, 558 F.2d at 126. Indeed, during the last three years, we have applied both standards in every ineffective assistance of counsel case decided by published opinion. And in every case, we found that the result would be the same under either standard. *United States v. Maniego,* 710 F.2d 24, 26–27 (2d Cir.1983) (per curiam); *United States v. Helgesen,* 669 F.2d 69, 71 (2d Cir.), cert. denied, 456 U.S. 929, 102 S.Ct. 1978, 72 L.Ed.2d 445 (1982); *United States v. Alessi,* 638 F.2d 466, 477 (2d Cir. 1980); *United States v. Aulet,* 618 F.2d 182, 187 (2d Cir.1980).

Second, we note that in applying the "farce and mockery" standard, this court has in recent years often used language normally associated with the inquiry employed in the "reasonably competent assistance" test. For example, in *Ennis v. LeFevre,* 560 F.2d 1072, 1076 (2d Cir.1977), cert. denied, 435 U.S. 976, 98 S.Ct. 1625, 56 L.Ed.2d 70 (1978), Judge Meskill pointed out that if defendant's counsel failed to press an argument that had obvious merit, act as an advocate, obtain an adequate record or perform a conscientious investigation, the defendant could prevail on an ineffective assistance claim. This enumeration of different elements of a claim of ineffective assistance, together with the listing of objective criteria (e.g., failure to press an argument) is typical of "reasonably competent assistance" standards. See *United States v. DeCoster,* supra, 487 F.2d at 1203–04. Similarly, in *Saltys v. Adams,* 465 F.2d 1023, 1028 (2d Cir.1972), Judge Oakes, joined by Judge Smith, held that the assistance of counsel had been inadequate because the attorney had not explored, at a

suppression hearing in the absence of the jury, the evidence underlying the proposed in-court identification procedure. In support of this conclusion, Judge Oakes noted that this procedure had been described as "proper" by the Connecticut Supreme Court. The inquiry in that case does not appear to be very different from that required to determine whether the assistance was "reasonably competent," that is, whether the attorney took advantage of techniques deemed "proper" for criminal defenses.

Third, other circuits have found that as the "farce and mockery" test evolved through the decades, it became little more than a shorthand description of an objective inquiry into "reasonable competence." For example, in moving from one standard to the other, the Ninth Circuit stated that "[t]he reformulation more accurately describes the law as it has actually been applied, in this circuit and in others, for many years." *Cooper v. Fitzharris,* supra, 586 F.2d at 1330. Similarly, in adopting a new standard for the competency of counsel, the Eighth Circuit stated:

> As we perceive the standard established in our prior decisions it is that trial counsel fails to render effective assistance when he does not exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances. When he fails in the performance of this duty the proceedings may be said to have been reduced to a "farce" and "mockery of justice."

*United States v. Easter,* supra, 539 F.2d at 666 (citations omitted).

Although the difference between the two standards, as they are now applied in this circuit, may be in large part a matter of semantics, there are nonetheless substantial reasons that call for the explicit adoption of a standard of "reasonable competence." First, such a new standard would be consistent with the Sixth Amendment jurisprudence developed by the Supreme Court in the wake of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The "farce and mockery" standard, first formu-

lated eighteen years before *Gideon,* was based on the due process clause of the Fifth Amendment. *Diggs v. Welch,* supra, 148 F.2d at 668–69, had viewed the Sixth Amendment somewhat narrowly to be concerned only with assuring the presence of counsel, leaving the performance of counsel to be tested against the more general "fair trial" standard of the Fifth Amendment's due process clause. More recently, however, the Sixth Amendment has become the source not only of the right to counsel but also of the standard to be used in determining whether the assistance of counsel is "effective." See *United States v. DeCoster,* supra, 487 F.2d at 1202. In particular, after the Supreme Court decided in *Gideon* that the Sixth Amendment right to counsel is of sufficiently fundamental importance to be binding on the states under the due process clause of the Fourteenth Amendment, the Court has repeatedly referred to some minimal quality of representation in articulating the level of assistance necessary to assure the constitutional validity of criminal convictions. For example, the Court has stated that a guilty plea can be challenged if counsel did not provide defendant with advice that was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763 (1970). Similarly, in *Cuyler v. Sullivan,* 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980), the Court said that "[a] guilty plea is open to attack on the ground that counsel did not provide defendant with 'reasonably competent advice.'" See also *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) (defendant may attack plea by showing that counsel's advice did not meet the *McMann* standards). And recently, speaking about assistance at trial, Justice O'Connor, writing for the Court, stated that "the Constitution guarantees criminal defendants . . . a competent attorney." *Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783 (1982). Thus, although the Court has never directly addressed the question of whether "reasonably competent assistance" at trial is constitutionally re-

quired, both the holding in *Tollett* and the dictum in *Isaac* clearly suggest that this standard is consistent with, and may in fact be required by, the Court's interpretation of the Sixth Amendment.

A second reason for adopting a "reasonably competent assistance" formulation of the standard for competency of counsel in a criminal trial is that this standard complements current efforts to improve the quality of representation in federal courts. Regardless of the way the standards have been applied by us in recent years, "reasonably competent assistance" has traditionally been perceived as a stricter constraint than "farce and mockery." Thus, the adoption of the former standard would underscore this court's concern with the quality of representation. In contrast, if we were to continue to reaffirm the "farce and mockery" standard, our action could be perceived as undermining this circuit's salutary policy of attempting to raise the standards of advocacy in general and of criminal advocacy in particular. See Second Circuit Report—1979, at 20–21. Also, given the pilot program on Admission of Attorneys to Federal Practice, implemented by the Judicial Conference of the United States, which requires that attorneys meet certain special requirements before being deemed qualified to practice before the federal courts, see, e.g., Annual Report of the Director of the Administrative Office of the U.S. Courts—1979, at 103–05, it would be ironic if the Second Circuit reaffirmed a standard that appeared to be less demanding than that adopted by all of the state courts within its geographic jurisdiction.

For these reasons, we believe that the time has come for us explicitly to adopt the "reasonably competent assistance" standard for criminal trials in this circuit. We do so now, and we note that this opinion has been circulated to all active members of the court, none of whom has requested a rehearing in banc.

### III.

■ Applying the standard of reasonable competence, we find that the assistance Trapnell received was not inadequate.[1] We have repeatedly noted our reluctance to second-guess matters of trial strategy simply because the chosen strategy was not successful. See, e.g., *United States v. Helgesen,* supra, 669 F.2d at 72; *United States v. Aulet,* supra, 618 F.2d at 189. We find that all of the complaints against counsel concern matters of trial strategy and thus do not form the basis for a finding of ineffective assistance.

Appellant complains primarily that counsel at his second trial failed to call Drs. Portnow, Hubbard and Cravens, even though the latter two had testified for the defense in the first trial. But at the second trial, Trapnell's attorney did present three expert witnesses, who testified about Trapnell's mental state: Drs. Augustus Kinzel, Jochanan Wiesenfreund and Gurstin Goldin. All three were psychiatrists and held teaching positions: Drs. Kinzel and Goldin at Columbia University, and Dr. Wiesenfreund at New York University. All three presented testimony that was favorable to Trapnell's insanity defense. Dr. Kinzel stated that Trapnell "was sufficiently impaired by mental illness not to be aware of what he was doing, the nature of what he was doing and certainly not to be able to control what he was doing." Dr. Wiesenfreund testified that Trapnell's conduct on the day of the hijacking was impaired by a mental disease or defect. Similarly, Dr. Goldin stated:

> nature of the issues before him, and we have examined the relevant portions of the transcripts of both trials. We also note that in its brief and at oral argument, the government did not argue that Trapnell was barred from raising these issues at this point. Thus, for the purposes of this appeal, we assume that the issues before us now were properly before Judge Mishler when he denied Trapnell's petition.

---

1. Trapnell's § 2255 petition and the government's response to that petition are unaccountably missing from the record. Trapnell's present attorney has stated that he has been unable to locate these documents, despite repeated efforts. This court has made independent inquiries, but it has also failed to find the missing papers. We do have, however, Judge Mishler's memorandum decision and order dated January 18, 1982, which makes clear the

My opinion is that at the time of the offense with which he has been charged his cognative [sic] and volitional capacities were impaired as a result of a psychological decompensatory process and that he was not able at the time, as a result of mental disease, to appreciate the wrongfulness of his behavior or to conform his behavior to the requires [sic] of the law.

We find that even conceding appellant's contention that Drs. Portnow, Cravens and Hubbard had had the most sustained contact with Trapnell immediately after the hijacking, the decision not to call them to testify can easily be justified. Dr. Hubbard's testimony at the first trial was not favorable to Trapnell. He stated that Trapnell "did have substantial capacity to understand the wrongfulness of his act and to have avoided its performance." Dr. Cravens was not allowed to testify on the issue of Trapnell's sanity; Judge Rosling held that he was not qualified to do so. Moreover, the record indicates that the government had contemplated calling Dr. Portnow as a rebuttal witness at the first trial. Trapnell's attorney may in fact have pursued the most promising strategy available: presenting witnesses who had had less contact with Trapnell but who were willing to make a strong statement about his insanity. And while the insanity defense ultimately did not prevail, that by itself is insufficient reason to find that the assistance was ineffective.

We have considered all of appellant's other arguments in support of his contention that he was denied "effective" assistance of counsel, and we find that they are without merit.[2] We thus affirm the judgment of the district court.

---

2. Trapnell also argues that Judge Mishler was prejudiced at sentencing by an erroneous statement in the presentence investigation report. In denying the petition, Judge Mishler said that he did not rely on this statement. In this appeal, Trapnell does not explain the basis for his disagreement with Judge Mishler's conclusion, and deals with this argument only in one short footnote in his brief.