Douglas AMES, Petitioner,

v.

NEW YORK STATE BOARD OF
PAROLE, Respondent.

No. 83 CV 4418 (TCP).

United States District Court,
E.D. New York.

Sept. 5, 1984.

Douglas Ames, pro se.

Shumalit Rosenblum, Asst. Dist. Atty.,
Brooklyn, N.Y., for respondent.

MEMORANDUM AND ORDER

PLATT, District Judge.

Petitioner Douglas Ames, appearing *pro se*, has moved this Court for a writ of habeas corpus under section 2254 of Title 28 of the United States Code. He contends that his pleas of guilty to charges of robbery and attempted robbery in the first degree were not entered knowingly and voluntarily and were accepted by the Kings County Supreme Court without a factual basis. He also argues that he was denied effective assistance of counsel in connection with the entering of his plea. As a

result, he maintains that the Fifth, Sixth and Fourteenth Amendments to the United States Constitution have been violated and seeks to vacate the pleas and judgments. For the reasons stated below, the petition for a writ of habeas corpus is granted.

## I. THE FACTS

On March 22, 1974, petitioner, represented by counsel, entered pleas of guilty in the Kings County Supreme Court to ten counts of robbery in the first degree, two counts of attempted robbery in the first degree, four counts of robbery in the second degree, six counts of grand larceny in the third degree, one count of attempted grand larceny in the third degree, and one count of criminal possession of a dangerous drug in the sixth degree. Prior to accepting petitioner's plea, the Court determined that he had discussed his case with his lawyer and advised him that by pleading guilty he waived the right to a trial by jury, the right to produce witnesses in his own behalf and the right to cross-examine witnesses testifying for the People. The Court also informed Mr. Ames of the range of punishment that would be imposed and stressed that, as a predicate felon, he would receive a mandatory jail sentence. Petitioner indicated he understood that by pleading guilty he was admitting he was in fact guilty of the crime charged and did not wish to go to trial.

The Court then asked Mr. Ames to describe what had happened in the course of each of the alleged crimes. He admitted to each of the robberies, offering details as to their execution and, as he described each crime, clearly stated that in each of them he had used a fake pistol. The Court accepted his pleas of guilty to robbery in the first degree and entered a conviction upon all the charges. The Court did not advise the petitioner as to the nature or elements of the crime of robbery in the first degree. The Court also did not inform petitioner or question him as to his awareness of the fact that, if he had in fact used a fake pistol in the robberies, he would have an affirmative defense to robbery in the first degree which would convert the crime to robbery in the second degree.[1]

On May 8, 1974, petitioner, as a second-felony offender, was sentenced to concurrent terms of eight to sixteen years on the first degree robbery counts, five to ten years on the counts of attempted first degree robbery, two to four years on the counts of second degree robbery, one year on the grand larceny counts, one year on the attempted grand larceny count, and one year on the drug count.

Petitioner appealed the conviction to the Appellate Division, Second Department. He argued that his plea should be vacated under the principles expressed by the New York Court of Appeals in *People v. Serrano*, 15 N.Y.2d 304, 206 N.E.2d 330, 258 N.Y.S.2d 386 (1965),[2] because the Court

---

**1.** Section 160.15 of the New York Penal Law provides:

Robbery in the first degree

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:

1. Causes serious physical injury to any person who is not a participant in the crime; or
2. Is armed with a deadly weapon; or
3. Uses or threatens the immediate use of a dangerous instrument; or
4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded

weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

Robbery in the first degree is a class B felony.

**2.** In *People v. Serrano*, 15 N.Y.2d 304, 206 N.E.2d 330, 258 N.Y.S.2d 386 (1965), the New York Court of Appeals found that, in order to accept a plea of guilty, the Court must determine that there is a factual basis for the plea. In *Serrano*, the defendant pled guilty to the crime of murder in the second degree. An essential element of the crime—the intent to kill—could not be inferred from the defendant's recitation of the circumstances of the killing

improperly accepted the plea to first degree robbery when the facts given by him during the plea allocution demonstrated an affirmative defense. The judgment was affirmed without opinion on November 14, 1975 and petitioner's motion for reargument was denied on January 16, 1976. The New York Court of Appeals denied his motion for leave to appeal on February 4, 1976.

Pursuant to New York Criminal Procedure Law § 440.10 (McKinney 1983), petitioner then moved to vacate the judgment of the Kings County Supreme Court. He once again asserted his argument under *Serrano* and also argued that he had had inadequate assistance of counsel since he had not been informed of the affirmative defense. This motion was denied without opinion on June 22, 1976 and leave to appeal the denial was denied by the Appellate Division, Second Department on October 1, 1976.

Petitioner then filed an application for a writ of habeas corpus with this Court, claiming violations of his Fifth, Sixth and Fourteenth Amendment rights. We ordered an evidentiary hearing, which was held on April 4, 1977. Petitioner and his trial counsel testified at the hearing. Petitioner testified that none of the lawyers he had encountered in connection with his various robbery indictments, including his trial counsel, had informed him of a possible affirmative defense even though he had told each of them that in each of the robberies he had used a fake pistol. He further testified that he did not have independent knowledge of the defense and had only learned of it after he had begun to serve his sentence. His trial counsel testified that he did not recall whether he had ever told Mr. Ames that the use of a fake pistol was an affirmative defense. However, he testified that, although Mr. Ames told him he had used a fake weapon, "he [Mr. Ames] never stated he knew anything

about [an affirmative defense]." [Transcript of April 4, 1977 Hearing p. 41].

On June 27, 1978, we issued an opinion denying the petition on the ground that Mr. Ames had failed to exhaust his claims in State Court because the federal questions raised in his habeas corpus petition had not been properly presented to the State Courts. After granting petitioner's motion for leave to reargue, we affirmed our original decision and denied petitioner's application for a certificate of probable cause.

On February 24, 1981, petitioner was released on parole. He was subsequently convicted of robbery in the second degree in Queens County and a warrant from the New York State Division of Parole was lodged against him. He was sentenced to seven and a half years to fifteen years as a second felony offender.

On November 10, 1982, petitioner, mindful of this Court's prior decision concerning his failure to satisfy the exhaustion requirement and of the fact that he remains within the custody and control of the New York State Division of Parole, filed another motion to vacate his 1974 judgment of conviction with the Supreme Court, Kings County. He raised his federal claims, arguing that, because his defense counsel had not explained the possible presence and effect of an affirmative defense and the Court had accepted the plea without further inquiry after his factual allocation indicated an affirmative defense, his plea of guilty was not voluntary and knowing and was entered in violation of the Fifth, Sixth and Fourteenth Amendments of the Constitution. By opinion dated January 28, 1983, the Supreme Court denied petitioner's motion. Leave to appeal was denied.

Petitioner then filed this application. Since the issues presented here are identical to those raised by the petitioner in the State Courts, he has fully exhausted his State remedies and may proceed under 28

---

and the trial judge did not make any inquiry into the considerable variance between the elements of the crime charged and the defendant's version of the event. The Court held that "before accepting a plea of guilty where the defend-

ant's story does not square with the crime to which he is pleading, the court should take all precautions to assure that the defendant is aware of what he is doing." *Id.* at 310, 206 N.E.2d at 334, 258 N.Y.S.2d at 390.

U.S.C. § 2254(b) (1982). *Picard v. Conner,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

## II. DISCUSSION

### A. *The Petitioner's Claim that his Plea of Guilty was not Voluntary and Intelligent*

■ The tender and acceptance of a guilty plea is an act of great importance since it takes the place of a criminal trial and functions as a conviction. By entering a guilty plea a defendant waives his Fifth Amendment privilege against self-incrimination and his constitutional rights to a fair trial and to confront his accusers. *E.g., Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). Therefore, as in other situations where there is a waiver of constitutional rights in a criminal context, a defendant who pleads guilty is afforded various procedural safeguards which are designed to ensure that the plea was voluntarily and intelligently made and was not improperly obtained. *See Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ The case law concerning the requirements of a valid guilty plea demonstrates that the United States Supreme Court considers the constitutional waivers inherent in the tendering of a guilty plea of such importance and the risk of an invalid plea of such significance that it has required judges actively to inquire into the elements and circumstances of the plea. Accordingly, the Supreme Court has required judges, regardless of whether the defendant has counsel, to "canvas[ ] the matter with the accused to make sure he had a full understanding of what the plea connotes and of its consequence." *Boykin,* 395 U.S. at 243–44, 89 S.Ct. at 1712. As a result, before a judge may accept a guilty plea, he must inquire into due process req-

uisites and the record must demonstrate that the plea was entered voluntarily and intelligently and that there was a factual basis for the plea. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Brady, supra; Boykin,* 395 U.S. at 242, 89 S.Ct. at 1711.

The inquiry into the voluntariness of a guilty plea is designed to ensure that it was tendered freely and was not the result of impermissible pressure, threats or inducement. *Brady,* 397 U.S. at 753–54, 90 S.Ct. at 1471–72; *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 478 (1962). The inquiry concerning intelligence is to ensure that the defendant has sufficient information to assess fully his situation and that he understands the nature of the charges against him and the direct consequences of his plea. *Henderson v. Morgan,* 426 U.S. 637, 645, 96 S.Ct. 2253, 2257, 49 L.Ed.2d 108 (1976); *Brady,* 397 U.S. at 756, 90 S.Ct. at 1473; *Smith v. O'Grady,* 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941). A judicial inquiry into these two requirements should demonstrate that a defendant understands that impermissible pressure may not be used to induce his plea, the specific nature of the charges against him, that a plea waives certain constitutional rights, the minimum and maximum penalties for the charge and that certain consequences flow from a plea conviction.

■ The factual basis inquiry, which requires a determination that there is a factual basis for a guilty plea before it is accepted, is designed to ensure accuracy in the plea process and further guarantees that a plea of guilty is voluntarily and intelligently entered. This inquiry is required by Federal Rule of Criminal Procedure 11,[3] by the case law and statutes of numerous States, including New York, *People v. Serrano,* 15 N.Y.2d 304, 206 N.E.2d 330, 258

---

**3.** Federal Rule of Criminal Procedure 11 provides, in pertinent part, that: "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R. Crim.P. 11(f).

N.Y.S.2d 386 (1965),[4] and by *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). While it is clear that the voluntariness and intelligence inquiries are constitutional in nature and mandated by the Due Process Clause, *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), there has been some debate concerning whether a factual basis inquiry is an element of fundamental due process. *See* Barkai, *Accuracy Inquiries for All Felony and Misdemeanor Pleas: Voluntary Pleas But Innocent Defendants?*, 126 U.P.L.Rev. 88, 112 n. 156 (1977); Heberling, *Judicial Review of the Guilty Plea*, 7 Lincoln L.Rev. 137, 181–83 (1972); *The Supreme Court, 1968 Term*, 83 Harv. L.Rev. 7, 184–85 (1969). After reviewing the applicable Supreme Court cases, this Court concludes that the factual basis requirement is an element of due process and a constitutional requirement for a valid plea. *See, e.g., Alford, supra* (requiring factual basis inquiry); *Boykin*, 395 U.S. at 243 n. 5, 89 S.Ct. at 1712 n. 5 (a guilty plea "cannot [sic] be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts."); *McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1170 (same).

Petitioner Ames maintains that his pleas of guilty were not entered voluntarily and intelligently and were accepted by the Court without a factual basis in violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution. He asserts that the pleas and the judgments were obtained without due process of law and, therefore, that they must be vacated.

Petitioner's attacks on the voluntary and intelligent nature of his plea and on the failure of the Court to establish a factual basis are inextricably linked. First, he indicates he was not told by his lawyer or the Court of the elements of the crime of robbery in the first degree and that an affirmative defense, which would reduce the crime to robbery in the second degree, was available to him. He argues that, inasmuch as he was not told of and did not know about the affirmative defense, he could not make an intelligent and voluntary decision concerning whether to plead guilty to robbery in the first degree. Petitioner further contends that the Court failed to establish a factual basis for the plea to first degree robbery since he stated during the plea allocution that he used a fake pistol and the Court failed to make any further investigation into the circumstances of the plea as required by *North Carolina v. Alford, supra*. He argues that he declared his guilt to a crime of robbery committed with a fake gun and that this declaration did not establish a factual basis for a plea of guilty to robbery in the first degree. He maintains that his plea of guilty is invalid since it was not voluntarily and intelligently entered and was accepted without a factual basis.

The respondent, the New York State Division of Parole, contends that petitioner's plea of guilty to robbery in the first degree was made voluntarily and properly accepted by the Court. It asserts that the possibility of an affirmative defense raised by petitioner's plea allocution does not negate the factual basis underlying the plea.

In support of its position, respondent argues that, despite the presence of a possible affirmative defense, the elements of robbery in the first degree were met since Ames admitted having displayed what appeared to be a pistol during the robberies and the possession of a weapon actually capable of causing death is not a necessary element of the crime of robbery in the first degree. Respondent argues that, since the formal elements of robbery were demonstrated during the plea allocution, a sufficient factual basis was established. It further maintains that, even where the plea allocution reveals an affirmative defense to the crime to which the defendant is pleading guilty *Alford* and its progeny do not require the Court to take additional steps to ensure that the plea is knowing and voluntary since the basic elements of the crime are present.

4. *See* note 2 *supra*.

Respondent also argues that the petitioner could have intelligently decided to enter a plea of guilty despite the availability of an affirmative defense because of the strength of the State's case and the difficulty of proving the affirmative defense. It suggests that the plea should be sustained on the ground that it was sought by petitioner, who was represented by counsel, and freely taken as part of the bargain struck for his benefit. Respondent claims that this bargain, and the benefit received by the petitioner for the plea, is evident from the fact that he was only sentenced to a term of imprisonment of eight to sixteen years for robbery in the first degree to be served concurrently with the other sentences imposed for the other crimes.

■ We believe that respondent misreads the applicable case law and mischaracterizes the responsibility of the Court during the plea process.

The Supreme Court has recognized that "real notice of the true nature of the charge ... [is] the first and most universally recognized requirement of due process...." *Smith v. O'Grady*, 312 U.S. at 334, 61 S.Ct. at 574. Furthermore, a guilty plea "cannot [sic] be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Boykin*, 395 U.S. at 243 n. 5, 89 S.Ct. at 1712 n. 5 (quoting *McCarthy*, 394 U.S. at 470–71, 89 S.Ct. at 1172–73). Accordingly, failure to provide such notice will result in the invalidation of a plea.

In *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), the Supreme Court found that a plea of guilty to second degree murder was involuntary where neither the trial judge nor defense counsel informed the defendant that intent to cause the death of his victim was an element of the crime of second degree murder and, during the plea allocution, the defendant had not made any statement or admission implying such an intent. The Court found that "the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Id.* at 645, 96 S.Ct. at 2257 (quoting *Smith*, 312 U.S. at 334, 61 S.Ct. at 574).

■ We believe that the principles enunciated by the *Morgan* Court are controlling in the instant case and mandate a conclusion that the plea is invalid. While this case may be distinguished from *Morgan*, it can be easily demonstrated that such a distinction would adopt a too narrow and mechanistic view of *Morgan*. For example, it could be argued that, unlike in *Morgan* where the plea was invalid because the petitioner was unaware of a "critical" element of the crime which, if not present, would reduce the degree of the crime, *id.* at 646 n. 18, 96 S.Ct. at 2258 n. 18, the petitioner here was unaware only of an affirmative defense which does not negate a critical element of the crime. Such an argument would further suggest that, whereas knowledge of essential elements of a crime is necessarily for a voluntary and intelligent plea, knowledge of an affirmative defense is not.

While we appreciate these distinctions and recognize that under some circumstances the distinctions may be controlling, we believe the constitutional policies enunciated by the *Morgan* Court are of paramount and overriding importance. *Morgan* sought to ensure the voluntariness and intelligence of a plea by requiring adequate notice of the offense to which one is pleading guilty. In this case, the record does not contain either an explanation of the charge by the judge or a representation by the defense counsel that the nature of the offense had been explained to the petitioner. Even when the petitioner informed the trial judge on five different occasions during the plea allocution that he had used a fake gun in the execution of the robberies, the judge failed to inform petitioner that if a fake gun was in fact used, an affirmative defense was available. We believe that knowledge of an affirmative defense is an important consideration in a determination of whether to plead guilty. Under the

facts of this case, where petitioner repeatedly offered information that demonstrated the presence of such a defense, it was impossible to make a voluntary and intelligent decision to plead guilty.

The *Morgan* decision requires notice of the true nature or substance of a charge. Under the facts presented here, the petitioner here was not provided such notice. Accordingly, his plea was not voluntary and intelligent.

Even if this Court had concluded that this situation did not fall within the prohibitions of *Morgan,* the plea would still have to be declared invalid because the trial court failed to establish a factual basis for the plea.

The factual basis requirement was formulated by the Supreme Court in *McCarthy v. United States, supra,* and *North Carolina v. Alford, supra.* In *McCarthy,* the Court for the first time discussed the factual basis requirement mandated by Rule 11 of the Federal Rules of Criminal Procedure. The Court determined that in order for a guilty plea to be valid, Rule 11 required a federal judge to inquire whether a defendant understands the charge against him, whether he is aware of the consequences of the plea, and to ascertain whether there is a factual basis for the plea. *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171. The *McCarthy* Court found that the trial judge's failure to follow Rule 11 deprived the defendant of "the Rule's procedural safeguards that are designed to facilitate a more accurate determination of the voluntariness of his plea." *Id.* at 471–72, 89 S.Ct. at 1173. It also indicated that the voluntariness, intelligence and factual basis requirements are so intertwined that a plea of guilty "cannot [sic] be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Id.* at 466, 89 S.Ct. at 1170.

In *North Carolina v. Alford, supra,* the Court addressed the factual basis requirement outside of the context of Rule 11. The Court held that a State Court could accept a guilty plea accompanied by a defendant's claim of innocence as long as the record before the judge contains a "strong factual basis" for the plea. *Alford,* 400 U.S. at 38, 91 S.Ct. at 167.

In *Alford,* the defendant was charged with first degree murder which, under North Carolina law, was punished by death unless the jury recommended life imprisonment. Faced with strong evidence of guilt, the defendant decided to plead guilty to a lesser charge, while still claiming his innocence. Faced with a guilty plea and protestations of innocence, the State Court heard a summary presentation of the State's case. The defendant also took the stand and testified that, although he claimed he was innocent, he was pleading guilty because the State's case was so strong and, if convicted of first degree murder, he was faced with the threat of the death penalty. The trial court accepted the defendant's plea.

The Supreme Court found that, under the circumstances, the State Court could accept the plea. The Court recognized that "[a]n individual accused of crime may voluntarily, knowingly, and understandably consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* at 37, 91 S.Ct. at 167. It stressed that the trial court had fully explored the voluntariness and intelligence of the plea and had established a factual basis; the record demonstrated that the State had a strong case against the defendant which substantially negated his claims of innocence and which provided a basis by which the judge could test the intelligence of the plea. *Id.* at 37–38, 91 S.Ct. at 167. Accordingly, the Court held that "[i]n view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting [the plea]." *Id.* at 38, 91 S.Ct. at 167.

Accordingly, the factual basis requirement promotes the assurance of accuracy between the defendant's conduct and the crime being plead to so as to prevent a

defendant from offering a plea "without realizing that his conduct does not actually fall within the charge." *McCarthy,* 394 U.S. at 467, 89 S.Ct. at 1171 (quoting Advisory Committee Notes to Fed.R.Crim.P. 11). Consequently, the factual basis inquiry further implements the requirement that no guilty plea be accepted unless it is voluntary and intelligent.

During the plea allocution in this case, the trial judge asked Mr. Ames to describe the robberies. Mr. Ames' testimony demonstrated a clear discrepancy between his conduct and the first degree robbery charge to which he was pleading guilty. He stated that during each of the robberies he had used a fake pistol; if true, this affirmative defense made him guilty of robbery in the second degree and not robbery in the first degree. Despite this considerable discrepancy, the trial judge failed to take any additional steps to clarify the situation and we are thus presented with the issue of whether the trial judge established a factual basis for the plea.

The respondent argues that the factual basis inquiry only requires that the record demonstrate that all of the formal elements constituting the crime have been established. Since possession of a firearm is an element of the crime of robbery in the first degree and the fact that the firearm was not capable of producing injury is only an affirmative defense, the respondent argues that Mr. Ames' testimony, admitting the use of a gun, provides a sufficient factual basis for the plea of guilty.

We do not agree and believe that such an interpretation of the factual basis inquiry would be too narrow and would fail to further the goal of ensuring that all guilty pleas are voluntary and intelligent. The key to *Alford* and its progeny is that the fundamental constitutional policy demanding voluntary and intelligent pleas must be nurtured at all times. This is not to suggest that during a plea allocution a judge must explain all of the defenses that theoretically may be available to a defendant, but, when the defendant provides information that indicates a possible defense or suggests that the defendant's conduct does not fall within the crime charged, a trial judge must take further steps to establish a factual basis and that the plea was voluntary and intelligent.

■ *Alford* provides that in situations where there is a discrepancy between the crime being pled to and the conduct being admitted, the trial judge must take additional steps to guarantee a factual basis for the plea. In this case, the trial judge failed to follow any of the precautions established by the *Alford* Court. The trial judge did not either (1) hear a summary presentation of the State's case and conclude that, given the evidence, there was a factual basis for the plea of guilty to robbery in the first degree despite petitioner's claim that he used a fake pistol or (2) question the petitioner and conclude that, despite the petitioner's claim that a fake pistol was used, it was reasonable for the petitioner to conclude that he could not convince a jury of his affirmative defense and that, therefore, it was in his best interest to plead guilty. We believe that without establishing a factual basis in this manner, the voluntariness and intelligence of petitioner's plea is drawn seriously into question.

It has also been argued that the protections afforded by *Alford* are required only in those situations where a defendant wants to plead guilty while at the same time continuing to assert his claim of innocence and that, since the petitioner has freely admitted his guilt, the *Alford* protections are unavailable. Such a construction of *Alford* would fail to safeguard sufficiently the voluntary and intelligent nature of a guilty plea and must, therefore, be rejected.

Finally, the respondent has suggested that the petitioner had knowledge of the affirmative defense and knowingly waived it as part of the plea bargaining process. In fact, this was a position adopted by the State Court reviewing petitioner's federal claim. This Court readily admits that, given the manner in which the plea bargaining process is handled in State Courts, these evaluations may be correct. In fact, given

the light sentence which the petitioner received, it is reasonable to conclude that it was part of the plea bargain for the petitioner to plead guilty to robbery in the first degree. Nevertheless, the record before this Court fails to establish any of these conclusions. Due process requires that a record establish that a guilty plea is entered voluntarily and intelligently. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). Since the record does not demonstrate that petitioner voluntarily and intelligently waived the affirmative defense, this position may not be adopted to defeat the conclusion that the trial judge failed to establish a factual basis for the plea.

### B. *The Petitioner's Claim that He was Denied Effective Assistance of Counsel*

■ In conjunction with his claims discussed above, Mr. Ames claims that his plea was obtained without due process of law since his trial court counsel failed to inform him that he did not commit robbery in the first degree and that he had an affirmative defense. Although the Supreme Court has indicated that "it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit," *Henderson v. Morgan,* 426 U.S. at 647, 96 S.Ct. at 2258, this presumption is inappropriate here since petitioner's trial counsel testified before this Court that, although he remembered petitioner telling him he used a fake pistol, he could not recall advising petitioner that, if true, he would have an affirmative defense. Therefore, we are presented with the issue whether failure to explain the presence of an affirmative defense constitutes ineffective assistance of counsel. Although we are considering this claim separately, we must note that it is so closely related to the voluntariness of the plea that it is almost impossible to sever it from the claims discussed above.

The United States Court of Appeals for the Second Circuit has recently abandoned its former "farce and mockery" standard in favor of the more prevalent "reasonably competent" standard in evaluating effective assistance of counsel claims. *Trapnell v. United States,* 725 F.2d 149 (2d Cir. 1983). The Second Circuit held that all performances of counsel were expected to be "within the range of competence reasonably expected of attorneys in criminal cases." *Id.* at 153.

In his testimony before this Court, petitioner's counsel indicated that, while he was aware that the use of a fake weapon reduced the crime of burglary in the first degree to burglary in the second degree, he could not recall providing his client with this information and, as a result, petitioner was unable to make a knowing and intelligent decision regarding his plea.

Applying the appropriate standard for determining effective assistance of counsel, we do not believe that the petitioner's counsel performed "within the range of competence reasonably expected of attorneys in criminal cases," *id.,* and, under these circumstances, are persuaded that the petitioner was denied the effective assistance of counsel. As stated in a similar context:

> Of course, it is not for a lawyer to fabricate defenses, but he does have an affirmative obligation to make suitable inquiry to determine whether valid ones exist. Such a duty is imposed for the saluatory reason that '[p]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." *Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948).

*Jones v. Cunningham,* 313 F.2d 347 (4th Cir.1963). *See also United States v. Villar,* 416 F.Supp. 887 (S.D.N.Y.1976).

### CONCLUSION

This is a particularly difficult case. The record indicates that two contrary conclu-

sions could be drawn from the facts of this case. First, as did the State Court reviewing this case, one could reasonably infer that Mr. Ames knowingly entered into a plea bargain with the State whereby he pled guilty to robbery in the first degree in exchange for a lighter sentence traditionally connected with a robbery in the second degree conviction. The facts strongly suggest such an inference and, if this view is adopted, petitioner's application for a writ must be denied. Such a disposition would be much easier to reconcile with the fact that Mr. Ames has admitted his guilt to these various crimes and the sentence imposed by the State Court Judge was appropriate for a robbery in the second degree conviction.

We believe, however, that no matter how strongly the record may suggest an inference, we may examine the record only as it stands. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). When the record is viewed in this matter, we believe that the case law mandates that we grant the petitioner's application for a writ of habeas corpus. Such a measure represents a drastic remedy not to be taken lightly. However, given the facts and circumstances of this case, we feel we are required to and, therefore, with a great deal of hesitation, we do grant a writ of habeas corpus.[5]

SO ORDERED.

---

**5.** The application for, and the grant of the writ, is limited to his guilty pleas, convictions and sentences on the counts of the indictment involving robbery in the first degree and do not affect his pleas, convictions and sentences on the remaining counts including the four counts involving robbery in the second degree.